Patricia Sherron **BOLHOFNER** and John **Bolhofner, Plaintiffs-Respondents,**

v.

**Edward E. JONES, Defendant-Appellant.**

No. 34288.

Missouri Court of Appeals,
St. Louis District,
Division No. 1.

May 23, 1972.

Rehearing Denied June 28, 1972.

Armstrong, Teasdale, Kramer & Vaughan, by John P. Emde, Thomas E. Wack and Larry Luber, St. Louis, for plaintiffs-respondents.

Carter, Bull, Baer, Presberg & Lee, by Richard O. Funsch, St. Louis, for defendant-appellant.

CLEMENS, Judge.

Intersectional collision case in which plaintiff Patricia Bolhofner and her father sued Patricia's host-driver David McMahon and Edward E. Jones, driver of the other car. Before trial plaintiffs settled with McMahon for $14,123 and dismissed as to him. Upon trial against Jones plaintiffs had verdicts and judgments for $12,500 and $1,065. Defendant appeals, contending plaintiffs did not make a submissible case.

The collision occurred at the intersection of east-west Lindbergh Boulevard and north-south Ringer Road. Lindbergh is a two-lane through highway; Ringer Road is a two-lane road with stop signs for cars entering Lindbergh. David McMahon, Patricia's host-driver, was headed south pre-

paring to cross Lindbergh, upon which Jones was driving eastward. McMahon stopped at the stop sign. From this position he had an unobstructed view for 400 feet westward on Lindbergh and Jones could see the McMahon car from wherever he was within that zone of intervisibility when McMahon stopped at Lindbergh. McMahon then moved forward into Lindbergh across the path of Jones' eastbound car. When McMahon was midway across Lindbergh's center line his right front quarter was struck by the left front quarter of Jones' car, which was then in the proper eastbound lane of Lindbergh. After impact Jones' car moved on east, leaving 97 feet of skid marks and McMahon's car "did a loop" and stopped on Lindbergh just east of the intersection. Patricia was thrown onto the highway, receiving substantial injuries and at trial could not remember the collision.

In determining whether plaintiffs made a submissible case we confine ourselves to the two issues submitted by plaintiffs' verdict directors. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91 [4, 5]; Begley v. Connor, Mo., 361 S.W.2d 836 [4, 5]. Those two negligence issues were Jones' failure to keep a careful lookout (MAI 17.05) and failure to swerve or slacken his speed after danger of collision became apparent (MAI 17.04).

As said, Patricia recalled nothing of the collision. Her host-driver David Mc-Mahon was not called as a witness nor was defendant Jones. The only evidence on liability came from an investigating police officer and two eye-witness motorists. Officer William Graham said that after the collision, "I believe his [Jones'] statement was to the effect that he was driving along and didn't know where the [McMahon] car came from—didn't know what happened."

Witness Joe Olderworth saw the collision from the south side of the intersection where he had stopped, headed north on Ringer Road preparatory to making a left turn into Lindbergh. When he first noticed the McMahon car it was stopped on Ringer Road headed south. Mr. Olderworth watched the McMahon car as it made a "normal start" across Lindbergh, but could not estimate its speed; he did not see the Jones car until the moment of impact with the McMahon car.

The other eye witness was Darvin Wagner. Driving west on Lindbergh, approaching the Ringer Road intersection, he was approximately an eighth of a mile short of the intersection when he first saw the McMahon car. The car was stopped but then made a "normal start" and was halfway across Lindbergh's center line when the collision occurred. Mr. Wagner did not see the Jones car until "a very short time" before the collision, gave no testimony about Jones' speed, position, nor where he was when he first saw the Jones car.

■ We look to this evidence for support of plaintiffs' lookout submissions. Failure to keep a careful lookout may be proven circumstantially, Welch v. Sheley, Mo., 443 S.W.2d 110 [6–8]. Jones could see the McMahon car from the moment it started out from the stop sign. It moved halfway across the center line of Lindbergh before the collision, and the jury could reasonably infer this would take at least two or three seconds, yet Jones told the police officer that "he didn't know where the [McMahon] car came from." That warrants an inference that Jones never saw the McMahon car before impact. To be totally unobservant for two or three seconds while approaching an intersection would justify a jury in finding that Jones failed to exercise the highest degree of care by failing to keep a careful lookout. This leads us to the necessary element of causation.

As said in Shelton v. Bruner, Mo.App., 449 S.W.2d 673 [3]: "To be *actionable*, negligence must be a proximate cause of injury. Hence, failure to keep a careful lookout, negligent though it is, does not become actionable and submissible in the ab-

sence of substantial evidence from which the triers of the facts reasonably may find that, in the exercise of the highest degree of care, defendant could and should have seen plaintiff *in time thereafter to have taken effective precautionary action.* And, '[h]aving the means and ability to avoid a collision means not only the mechanical appliances, . . . but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged to take effective action in avoidance.'" (Citing Zalle v. Underwood, Mo., 372 S.W.2d 98 [2]).

■ In *Zalle* the court held a lookout case was not made when "there was no evidence as to the relative speeds of and distances between the two vehicles at any given time. There is nothing in the evidence from which the jury could find where the two vehicles were located in relation to each other at any particular point in time before the impact occurred." That is what we have here. There was no evidence of Jones' distance from Ringer Road when McMahon entered the intersection, of his speed at any time, nor of Jones' ability to take effective evasive action. We know only that when the McMahon car entered the intersection Jones was at some uncertain distance to the west driving at some unspecified speed. Whether Jones could in the exercise of the highest degree of care have taken effective action to avoid the collision "left the element of causal connection in the nebulous twilight of speculation, conjecture and surmise." Shelton v. Bruner, supra [4–6]. We hold that by plaintiffs' failure to show causation they did not make a submissible case on the issue of defendant's failure to keep a careful lookout.

Plaintiffs' alternate submission was that Jones "knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have swerved, or slackened his speed, but defendant Jones failed to do so." (MAI 17.04). As said, plaintiffs' evidence did show McMahon had moved into the intersection and was halfway across the center line of Lindbergh when the collision occurred. From this the jury could infer that at some point on his approach to the intersection Jones "could have known that there was a reasonable likelihood of collision." But by plaintiffs' submission that knowledge must have come to Jones "in time thereafter to have swerved or slackened his speed."

■ This submission has elements akin to a humanitarian negligence case in that a defendant's duty arises at the moment he has actual or constructive notice of the likelihood of a collision, and his negligence is measured by his ability thereafter to avoid the collision. Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111 [4–7]. As to evidentiary support see Branscum v. Glaser, Mo., 234 S.W.2d 626 [4–6], quoting this court's opinion in Miller v. Wilson, Mo.App., 288 S.W. 997 [1]: "When, as is the case here, the record is utterly devoid of evidence as to defendant's speed, the distance within which he could have stopped his automobile, or the relative positions of the two machines at the moment when defendant could first be charged with actual or constructive notice of plaintiff's perilous position and of the danger of a collision, no case is made for the application of the humanitarian rule."

■ In the obvious absence of evidence of where the Jones car was when McMahon entered the intersection, or what his speed was at that time, or within what distance the car could have stopped or swerved, the jury had no basis for determining whether Jones' failure to take effective evasive action was negligent. We are back in the "nebulous twilight of speculation, conjecture and surmise." We hold that plaintiffs failed to present evidence to support their alternate submission of negligent failure to act after danger became

constructively apparent. Compare Cook v. Cox, Mo., 478 S.W.2d 678, 1972.

Plaintiffs rely principally upon the intersectional collision case of Jefferies v. Saalberg, Mo.App., 448 S.W.2d 288, submitted on the same verdict director as in our case. There, the parties' positions were the reverse of ours. Plaintiff Jefferies was a passenger in a car racing toward an intersection to beat a stop light. Defendant Saalberg was stopped at the intersection waiting for the light to change and started up when it turned green. There was evidence plaintiff was 90 feet away from the intersection, going over 45 miles an hour, when defendant without looking either way "darted out" into the intersection. At best, *Jefferies* held that a plaintiff may recover upon a showing of the approximate relative locations of the vehicles, their speeds and stopping distances. In our case those elements do not even reach an approximation.

Plaintiffs also cite Herr v. Ruprecht, Mo., 331 S.W.2d 642, concerning an intersectional collision case submitted on defendant's failure to yield the right-of-way. The critical issue was whether plaintiff was close enough to the intersection to constitute an "immediate hazard." This was determined favorably to plaintiff upon evidence that when defendant entered the intersection driving "very slowly" plaintiff was 50 feet short of the intersection driving at 40 miles an hour. Obviously this conclusion was based on specific facts about relative positions, speeds and distance—facts notably missing in our case.

Plaintiffs also rely on Commerford v. Kreitler, Mo., 462 S.W.2d 726 and Cox v. Moore, Mo.App., 394 S.W.2d 65, for the proposition that "the direct testimony of the party charged is not necessary to support a lookout submission." We have already noted that plaintiffs' evidence did show defendant's failure to keep a careful lookout but did not show that neglect was the proximate cause of the collision.

We have read the other cases cited by plaintiffs and find none out of harmony with the theory on which we have ruled this case.

To summarize: The jury could have found that when the McMahon car entered the intersection Jones negligently failed to see it and that the danger of a collision was then constructively apparent. But Jones' negligence, vel non, in thereafter failing to swerve, slacken speed or take other effective action depends on the answers to three questions: One, how far back from the intersection was Jones at that critical moment?; two, what was his speed? and three, within what distance could he have slackened his speed or taken any other effective evasive action? The testimony does not answer any one of these questions, either directly or inferentially. The jury could not have found Jones' failure to act proximately caused the collision without resorting to conjecture. Hence, there was no substantial evidence to support either of plaintiffs' submissions.

■■ Plaintiffs contend the trial court erroneously excluded evidence that would have tended to supply the deficiencies in their case. Plaintiffs' expert witness Bilhorn was qualified to give an opinion of defendant's speed based on 97 feet of skid marks. The trial court called upon the witness to specify how much of the skid marks were on the paved surface of Lindbergh and how much were on the shoulder. To meet this requirement plaintiff sought to show the witness two photographs depicting the skid marks. These two photographs, Exhibits 1 and 5, had been used by defense counsel in cross examining one of plaintiffs' witnesses. Defense counsel objected to plaintiffs showing the photographs to witness Bilhorn on the ground the photographs, although previously marked and used by defense counsel, had not been offered in evidence. The court sustained the objection on a different

ground of its own making, that the exhibits were privileged as defendant's work product. Neither ground was valid. Once an exhibit has been marked and used it is in evidence just as if it had been formally introduced. State v. Taylor, Mo., 433 S.W.2d 273. And, once an exhibit is in evidence it may be used by all parties. Merz v. Tower Grove Bank & Trust Co., 344 Mo., 1150, 130 S.W.2d 611 [9]; Atterbury v. Temple Stephens Co., 353 Mo. 5, 181 S.W.2d 659 [8].

Thus, plaintiffs were erroneously barred from showing defendant's speed. That speed would tend to show defendant's position when plaintiffs' car entered the intersection, and also whether defendant could have taken effective preventative action.

■■ Even though a plaintiff does not make a submissible case, where all pertinent factual information was not presented on trial an appellate court may remand the case for a new trial. Hood v. M. F. A. Mut. Ins. Co., Mo.App., 379 S.W.2d 806 [12]; Rule 84.14, V.A.M.R. Where the failure to make a case results from the erroneous exclusion of essential evidence substantial justice requires a new trial.

Since there was no error affecting damages the judgment is reversed and the cause is remanded for a new trial limited to the issue of defendant's liability.

PER CURIAM:

The foregoing opinion by CLEMENS, J., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded for a new trial limited to the issues of defendant's liability.

BRADY, C. J., and DOWD, SIMEONE, SMITH, and WEIER, JJ., concur.