**Sonya WALLANDER, Plaintiff-Appellant,**

v.

**John HICKS, Defendant-Respondent.**

**No. KCD 27058.**

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Motion for Rehearing and/or Transfer Denied Aug. 5, 1975.

Application to Transfer Denied Oct. 13, 1975.

Morgan M. Moulder, Camdenton, Claude T. Wood, Richland, for plaintiff-appellant.

Glenn A. Burkart, Richard E. Dorr, Mann, Walter, Burkart, Weathers & Walter, Springfield, Thomas G. Woolsey, Woolsey & Yarger, Versailles, for defendant-respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and SWOFFORD, J.

SOMERVILLE, Presiding Judge.

Plaintiff instituted an action for wrongful death (§ 537.080 et seq., RSMo 1969, V.A.M.S.) in the Circuit Court of Laclede County, Missouri, to recover damages for the death of her minor son Kevin Walters. Kevin, who was ten years old, sustained fatal injuries when struck by a motor vehicle driven by defendant. The tragic accident occurred on February 8, 1973, on City Route 66 in Lebanon, Missouri.

Plaintiff was divorced from Kevin's natural father and brought the wrongful death action in her name alone, for the use and benefit of both herself and Kevin's natural father, since the latter refused to join in the action.

The wrongful death action was tried in Morgan County, Missouri, on change of venue and submitted to the jury on two disjunctive grounds of primary negligence— (1) defendant failed to keep a careful lookout, or (2) defendant knew or by using the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or slackened his speed, or slackened his speed and sounded a warning, but defendant failed to do so.

The jury found the issues in favor of defendant, and judgment was entered in favor of the defendant in accordance with the jury's verdict. Plaintiff timely appealed the adverse judgment, claiming the trial court erred (1) in admitting into evidence a mutual agreement effected between plaintiff and Kevin's father, approved by the appropriate court having jurisdiction, which modified the original divorce decree affecting care, custody and control of Kevin, and (2) in permitting plaintiff to be cross-examined on, and Kevin's father on direct examination to testify to, the following matters: (a) identity of the person who was supporting and had actual custody of Kevin at the time of his death, (b) identity of the person who paid Kevin's medical and burial expenses, (c) refusal of Kevin's father to join in the wrongful death action, and (d) facts surrounding the mutual agreement effecting modification of the custody provisions contained in the original divorce decree.

The multiple instances of prejudicial error claimed by plaintiff are never reached if, as contended by defendant, plaintiff failed to make a submissible case under either disjunctive submission of primary negligence heretofore iterated.

 Resolvement of whether plaintiff made a *prima facie* case under either disjunctive submission of primary negligence relied upon is properly weighted in her favor. The evidence must be viewed in the light most favorable to plaintiff's theories of submission and she is to be accorded all reasonable inferences springing from the evidence when so viewed which aid her theories of submission. *Hecker v. Schwartz*, 426 S.W.2d 22 (Mo.1968); *Anthony v. Morrow*, 306 S.W.2d 581 (Mo.App. 1957); and *Graham v. Conner*, 412 S.W.2d 193, 198 (Mo.App.1967). However, this court can not imagine the existence of evidence, when none in fact exists, or supply missing evidence, to flesh out an otherwise insubmissible case, nor can it spring inferences from nowhere upon which to predicate submissibility.

Turning now to the evidence, and viewing it as just mentioned, the facts leading up to Kevin's tragic and untimely demise unfold as follows. Defendant, the only eyewitness to the accident culminating in Kevin's death, was called as a witness by plaintiff. He was seventy-nine years of age and a resident of Lebanon, Missouri. On the evening of February 8, 1973, he was returning to his home in Lebanon from a business trip to Springfield, Missouri. The weather was fair, clear and dry, and he was driving a 1971 Dodge Polara which was in good mechanical condition in all respects. He was alone at the time and arrived back in Lebanon at approximately six p. m. It was dusk and beginning to get dark when he arrived back in Lebanon and he therefore had the car's headlights on, as did other motorists at the time. Upon reaching

Lebanon he proceeded north on City Route 66, a two-lane blacktop road, approximately twenty feet wide, with six foot shoulders on each side, at a speed of approximately thirty miles per hour (within the posted speed limit).

Prior to the accident Kevin had been visiting in the home of Tracey Bell which was located on the east side of City Route 66. Kevin's home was on Howard Street and west of City Route 66. While Kevin was visiting in the Bell home it began to get dark and Kevin left, exiting the Bell home by way of the back door. Tracey Bell did not see the boy after he left his home until after the accident occurred.

The Bell home, which faced City Route 66, had two driveways, variously described as the first and second driveway, and the south and north driveway. The distance between the center of the south driveway and the center of the north driveway was sixty feet. The distance between the south line of the Bell property and the center of the north driveway was one hundred and fifty feet. There were a large number of trees (several of which were Cedar) located in and which "shaded" parts of the front lawn of the Bell home. However, their location with respect to and their effect on the area where the fatal accident occurred is far from definitive.

City Route 66 where it ran in front of the Bell property, and for some distance north and south thereof, was straight and level. As defendant proceeded north on City Route 66 in the area of the Bell home, with his headlights on, he could see ahead for a distance of approximately 300 to 350 feet, and as he did so he met an oncoming vehicle which momentarily occupied his attention.

Defendant had travelled the particular route in question on prior occasions and was familiar with the fact that the Bell driveways joined City Route 66 on the east side. Evidence was also introduced that children frequently had occasion to be in the area.

According to defendant, Kevin "jumped in front" of his car at a point near the south side of the north driveway which led to the Bell home. Defendant was looking straight ahead and did not see Kevin until the boy "jumped in front" of his car "from the shoulder of the driveway". Defendant's car struck Kevin at some point in the area adjacent to the north driveway and near the center or east portion of the northbound lane of City Route 66. The evidence was cast in such generalities that it defies fixing the point of impact with any greater degree of preciseness. Defendant did not sound his horn, slacken his speed or apply his brakes before his automobile struck Kevin.

After striking Kevin, it did not take defendant "very long" to bring his car to a stop. When his car was brought to a stop, it was headed north. Defendant then got out of his car and observed Kevin "lying crossways in the left lane" some six or eight feet from his car. The record does not otherwise indicate where Kevin was lying with respect to defendant's car.

In order to make a submissible case against defendant for failure to keep a careful lookout, substantial evidence had to be presented to the jury from which it could reasonably find that defendant, in the exercise of the highest degree of care, could and should have seen Kevin in time thereafter to have taken effective precautionary action. *Zalle v. Underwood*, 372 S.W.2d 98, 102 (Mo.1963); *Graham v. Conner, supra;* and *Michaud v. Burlingame*, 490 S.W.2d 680 (Mo.App.1973). Evidence of defendant's failure to keep a careful lookout, standing alone, was not sufficient to make a submissible lookout case. It had to be coupled with substantial evidence from which the jury could reasonably find that such failure constituted the proximate cause of the accident which resulted in Kevin's fatal injuries. *Zalle v. Underwood, supra;* and *Miller v. St. Louis Public Service Company*, 389 S.W.2d 769, 772 (Mo.1965). Evidence of the relative positions of defendant's car and Kevin with respect to the point of impact, when defendant could and should have seen Kevin in a position fraught with danger,

was necessary to enable the jury to find that defendant thereafter had the time, distance, means and ability to take effective precautionary action to avoid striking Kevin, i. e., to support a finding by the jury that defendant's failure to keep a careful lookout constituted the proximate cause of the accident which occasioned Kevin's fatal injuries. *Zalle v. Underwood, supra; Graham v. Conner, supra; Harris v. Lane,* 379 S.W.2d 635 (Mo.App.1965); and *Bolhofner v. Jones,* 482 S.W.2d 80 (Mo.App.1972).

██ Assuming, arguendo, that the jury could infer from the evidence that defendant could and should have seen Kevin before he did, more was required, as just mentioned, for plaintiff to make a submissible case predicated on defendant's failure to keep a careful lookout. When defendant could and should have seen Kevin, Kevin's location and conduct must have been such that defendant, in the exercise of the highest degree of care, knew or should have known that there was a likelihood of injury and, at that moment, the relative positions of defendant's car and Kevin must have been such that defendant had the time, distance, means and ability to take effective precautionary action. *Ochs v. Wilson,* 427 S.W.2d 748 (Mo.App.1968). In the instant case, mindful that Kevin's tender age made him less appreciative of potential danger and that such is a factor requiring proper consideration (*Graham v. Conner,* 202, *supra,* and cases therein cited), and after viewing all the evidence and the reasonable inferences springing therefrom in a light most favorable to plaintiff, the cold, harsh reality remains that no substantial evidence existed from which the jury could find or reasonably infer that defendant could and should have seen Kevin in a position of danger in time to have taken effective precautionary action when the duty to do so arose. The record is silent as to the relative positions of defendant's car and Kevin with respect to the point of impact prior to the time Kevin "jumped in front" of defendant's car from "the shoulder of the driveway". The record, likewise, is silent as to

the distance defendant's car and Kevin were, respectively, from the point of impact at the moment Kevin, as defendant testified, "jumped in front" of defendant's car from the "shoulder of the driveway". Although Kevin obviously "jumped in front" of defendant's car from the right, the angle from which he did so is not known, nor is the speed with which he did so known. No evidence was introduced showing where Kevin was with respect to the east edge of City Route 66 when he "jumped" from the "shoulder of the driveway" in front of defendant's car. The record is wanting with respect to whether Kevin was in continuous motion from the moment he left the Bell home until he was struck, and, if he was, whether he was walking or running. The evidence failed to provide even the slightest clue as to how much time elapsed between Kevin's departure from the Bell home and the occurrence of the accident. Kevin, for all the evidence shows, might have been standing clear of the travelled portion of City Route 66 in a position of safety on the shoulder as defendant's car approached, and then suddenly jumped in front of it just as it was passing. Even so, if such did occur, there was no evidence as to the relative positions of defendant's car and Kevin with respect to the point of impact as Kevin approached the shoulder, or when he arrived there, or when he "jumped" therefrom "in front" of defendant's car. The multiple vacuums existing in the evidence vis-a-vis the controlling principles heretofore iterated compel the conclusion that plaintiff failed to make a submissible case against defendant on the premise that he failed to keep a careful lookout.

██ What has been said regarding the legal frailty of plaintiff's submission that defendant was negligent in failing to keep a careful lookout likewise holds true and is germane regarding plaintiff's alternate submission that defendant "knew or by using the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or slackened his speed, or slack-

ened his speed and sounded a warning, but defendant failed to do so." Assuming, arguendo, that the jury could have inferred that at some point prior to impact defendant could and should have known of the reasonable likelihood of collision, such alone was insufficient to carry plaintiff's alternate submission to the jury. By the requiremental nature of the language of the alternate submission, evidence was additionally required from which the jury could find or reasonably infer that actual or constructive knowledge of the likelihood of collision was acquired by defendant in time to have thereafter effectively taken one of the suggested precautionary measures. As stated before, there was no evidence as to the respective distances of defendant's car and Kevin from the point of impact when Kevin could or should have been seen by defendant in a position fraught with the likelihood of injury. Consequently, there was an evidentiary void regarding whether defendant knew or could have known of the reasonable likelihood of collision in time to have thereafter effectively taken one of the suggested precautionary measures. Since evidence was lacking to support all the essential elements of plaintiff's alternate submission, she likewise failed to make a submissible case on her alternate submission. *Bolhofner v. Jones, supra;* and *Cook v. Cox,* 478 S.W.2d 678 (Mo.1972).

Plaintiff, apparently anticipating defendant's argument that she failed to make a prima facie case as to either disjunctive submission, cited two cases, *De Lay v. Ward,* 364 Mo. 431, 262 S.W.2d 628 (Mo. banc 1953) and *Immekus v. Quigg,* 406 S.W.2d 298 (Mo.App.1966), to counter said argument. Parenthetically, *De Lay* dealt principally with the zone of discoverable peril as related to the doctrine of humanitarian negligence. More to the point, however, the facts in said cases are clearly distinguishable from those here presented on appeal. In both *De Lay* and *Immekus* there was evidence from which the respective juries could determine that visibility of the injured parties, and distance, speed and direction of travel of the respective parties in relation to the points of impact at a particular point of time prior to the ensuing accidents, were such that said accidents could have been avoided by proper precautionary action. No broad spectrum of comparable evidence was present in the instant case to sustain submissibility of either of the disjunctive theories of actionable negligence relied on by plaintiff.

Since plaintiff failed to make a submissible case as to either disjunctive theory, her claims of trial error (*infra*) are unavailing, notwithstanding the fact that they might be found to be reversible error if fully analyzed and reviewed, because, according to the evidence, defendant was entitled to a judgment in his favor as a matter of law. Tragedy sometimes begets tragedy. Be that as it may, this court lacks the power to make an infirm case whole.

Judgment affirmed.

All concur.