William **CATO** and Lorenia Cato, Plaintiffs-Appellants,

v.

Aisie **MODGLIN,** et al., Defendants-Respondents.

No. 36709.

Missouri Court of Appeals, St. Louis District, Division One.

Oct. 26, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Application to Transfer Denied Feb. 14, 1977.

---

Igoe & Igoe, John R. Igoe, Ray E. White, Jr., St. Louis, for plaintiffs-appellants.

Kortenhof & Ely, Joseph M. Kortenhof, Ben Ely, Jr., St. Louis, for Jacky Williams.

Godfrey, Vandover & Burns, Inc., Samuel T. Vandover, St. Louis, for Lloyd Hicks.

Albrecht & Homire, Edmund C. Albrecht, Jr., St. Louis, for Aisie Modglin.

Holtkamp & Beckemeier, St. Louis, for Florence Dollinger.

RENDLEN, Judge.

Plaintiffs William and Lorenia Cato appeal from the judgment entered on directed verdicts for defendants Williams and Hicks and on the jury verdicts for defendants Aisie Modglin and Florence Dollinger, Administratrix of the Estate of Paul Dollinger. This case arises from a multi-car accident during a heavy snowstorm January 26, 1969.

Points numbered IV and IX of plaintiffs' brief, not raised in the motion for new trial, are thus not preserved for review. Rule 78.07 V.A.M.R. Plaintiffs points V, VI and VII are not in compliance with Rule 84.04(d) as they fail to tell us wherein or why the trial court's actions were erroneous. They, like IV and IX, are not reviewed. *Matter of Estate of Langford*, 529 S.W.2d 31, 32–3[4] (Mo.App.1975).

Contentions properly presented which we for convenience and clarity have renumbered, are as follows: The trial court erred (1) in directing a verdict for Williams and Hicks as a submissible case had been made against these defendants; (2) "in permitting repeated objections of defense counsel and comments of the court to interfere with the orderly presentation of the evidence and in the court making comments upon the weight and credibility of the evidence and witnesses and stating incorrectly testimony of witnesses and in criticizing plaintiffs' counsel all of which took place within the hearing of the jury"; and (3) in permitting testimony of the investigating officer from the Highway Patrol, that all cars were skidding, as he did not observe the accident.

■ "In determining whether . . . a submissible case was made on the theory of primary negligence or under the humanitarian rule we review the evidence from the standpoint most favorable to plaintiffs and give them the benefit of all reasonable inferences therefrom." *Schmittzehe v. City of Cape Girardeau*, 327 S.W.2d 918, 922[2] (Mo.1959); *see also Schmidt v. Allen*, 303 S.W.2d 652, 655[3] (Mo.1957); *Wardenburg v. White*, 518 S.W.2d 152, 154[1] (Mo.App. 1974). This standard of review is "tempered only by the wise, judicious limitation that this rule calls for consideration of all, not merely an isolated part or parts, of the facts shown by plaintiff and does not require the court to supply missing evidence, or to give plaintiff the benefit of forced unreasonable inferences, or to disregard the dictates of common reason and accept that which, on the whole record, obviously is not true." *Graham v. Conner*, 412 S.W.2d 193, 198[3] (Mo.App.1967).

■ Plaintiffs sought recovery from the defendants, alleging as acts of primary negligence, excessive speed, failure to keep a lookout ahead, failure to "have their vehicles under control," and neglecting to swerve or sound a warning; also as acts of humanitarian negligence, failure to stop, slacken, swerve, or sound a warning. If the evidence justified submission on *any* properly pled allegation against either defendant Williams or Hicks, the directed verdict as to such defendant must be reversed. *See Nelms v. Bright*, 299 S.W.2d 483, 488[12] (Mo. banc 1957).

■■ Considering the evidence most favorable to plaintiffs concerning defendant Williams, the jury could reasonably have found that plaintiffs and Williams were traveling north on Highway 67 toward St. Louis in a severe winter storm. The road, a four lane north-south divided highway, was covered with approximately four inches of snow and virtually all northbound traffic was traveling at 35–45 miles per hour in the right-hand lane. Williams was following plaintiffs either immediately behind or following a truck[1] immediately behind plaintiffs' automobile. When the line of traffic slowed in front of plaintiffs, their car went into a skid, apparently as a result of striking the car ahead, sliding sideways northward in the right-hand lane. Defendant Williams' car hit plaintiffs' car broadside or at a slight angle. After the impact, Williams' car slid around plaintiffs' and came to rest across the centerline north of plaintiffs' car. Williams admitted striking plaintiffs' car testifying: "When I said I could have gotten around him, I was basing it on the fact that the truck [i. e. the truck Williams said was traveling in front of his car] got around the car and the Volkswagen [plaintiffs' car] did appear to be mostly in my lane in the right so the truck got around, *so I assume I could have gotten around, I mean there was room to get around* but putting on my brakes I slid into him." (Emphasis ours.) Even if the jury did not believe there was a truck, this testimony with the other evidence combined to make a submissible issue of defendant's negligence in electing to stop instead of

---

1. Defendant Williams testified that he was fol*low*ing a truck and that the truck pulled over into the left-hand lane revealing plaintiffs' automobile sliding sideways in the lane before him. None of the other witnesses, however, remembered the truck and the jury need not have believed defendant's version of these facts. However, whether Williams was following plaintiffs or a truck immediately behind plaintiffs does not alter the outcome.

swerve. As this defendant testified, the truck ahead of him, if there was such a truck, swerved and missed plaintiffs' car, permitting the jury to consider whether Williams could have so swerved, since as he conceded, "I assume I could have gotten around, I mean there was room to get around." Therefore, the ruling of the trial court as to defendant Williams must be reversed and the cause remanded for re-trial.

Plaintiffs' case as to defendant Hicks was more tenuous. All the evidence tended to show that Hicks struck Williams' car in the left-hand lane, to the north of and after it had collided with plaintiffs' car. The record discloses and plaintiffs' counsel conceded in conference that their only evidence as to this defendant was (1) the fact that Hicks was unsure if he hit any other cars, and (2) paint samples taken from Hicks' and plaintiffs' cars were found to be identical by spectroscopic analysis. However, these samples were taken more than five weeks after the accident, during which time both cars had been towed to the same junk yard and stored with no effort made to preserve them as evidence. What movement or manner of handling and possible contact during or after their removal from the scene was not shown. Even accepting the smears as probative evidence that Hicks made contact with plaintiffs' car during the incident, there is no showing the impact was significant or the proximate cause of plaintiffs' injuries. On the contrary, the impact, if any, of Hicks with plaintiffs was unnoticed and slight and the evidence tended to show plaintiffs were injured in the broadside collision with Williams' car. Appropriate here is the following statement of our Supreme Court in *Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600, 608[11, 12] (1937):

The mere fact that injury follows negligence does not necessarily create liability. The burden of establishing by substantial evidence appellants' negligence as charged and the necessary causal connection between such negligence and the injury alleged rested upon respondent. And, if the evidence merely established

that the injury might have resulted from several causes for some but not all of which appellants were liable, the necessary causal connection remained in the realm of conjecture and speculation and respondent's case failed.

*See also Kane v. Chicago, Burlington and Quincy Railroad Co.*, 271 S.W.2d 518, 521[2] (Mo.1954), cert. denied 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738 (1955). Similarly, plaintiffs "upon whom the burden of establishing the essential element of causal connection is cast . . . do not carry their burden by leaving that essential element in the nebulous twilight of speculation, conjecture and surmise." *Hildreth v. Key*, 341 S.W.2d 601, 606[8, 9] (Mo.App.1960).

While as noted we must review the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to plaintiffs, it has been stated, appellate courts cannot "imagine the existence of evidence, when none in fact exists, or supply missing evidence, to flesh out an otherwise insubmissible case, nor can it spring inferences from nowhere upon which to predicate submissibility." *Wallander v. Hicks*, 526 S.W.2d 848, 850[2] (Mo.App. 1975). In the case at bar, while the evidence must have been sufficient to permit the jury to infer the Hicks' car contacted plaintiffs' there was no evidence from which the jury could determine the force of the impact or that any of plaintiffs' injuries were the result of that impact. Thus plaintiffs left the crucial element of causation in the realm of speculation and no submissible case was made. The trial court properly sustained defendant Hicks' motion for directed verdict.

Plaintiffs obliquely suggest that the court's erroneous action sustaining the directed-verdict motions prejudiced plaintiffs' case in the eyes of the jury, requiring reversal as to all other defendants. We do not agree. It is essential that if juries are to know what is to be considered and decided, they must be properly advised of rulings on motions to dismiss and as stated by the court in *Elmore v. Kansas City*, 333 S.W.2d

795, 798[3] (Mo.App.1960), "we are aware of no ruling taking the view that it effects juries prejudicially [to so advise them verdict-directing actions] in instances where another defendant thereafter remains in the case." As to the ruling on defendant Hicks' motion there can clearly be no prejudice. However, the erroneously directed verdict in favor of Williams is more troublesome. We have reviewed all of the evidence as to the other two defendants and find the verdicts amply supported. Further, the evidence as to Dollinger was different from that as to Williams. The evidence as to defendant Modglin was both different from and inconsistent with that against defendant Williams. Thus even though the directed verdict was erroneous, it could not have prejudiced and may have aided plaintiffs' case as to the other defendants. The judgment need not be and is not reversed as to all defendants.

 Appellants' third point alleges that the trial court allowed defense counsel to interfere with the orderly presentation of plaintiffs' case, made comments on the weight and credibility of the evidence, criticized plaintiffs' counsel and misstated the evidence. To review each instance would greatly lengthen this opinion and add little of precedential value. Suffice it to say we have reviewed each instance and reading the transcript as a whole, conclude the trial court behaved with commendable reserve in dealing with the repeated errors of plaintiffs' counsel brought to light by the various defendants. In light of the complex issues and multiple parties, there was the inevitable overlapping, inconsistencies and confusion in the evidence. This was to be expected and required some sorting by the court but we do not believe plaintiffs were treated unfairly or the presentation of their case prejudicially disrupted.

 The single possible instance of the trial court's misstatement of the evidence occurred when the court stated that the expert witness had said that he could not make any comparisons of one set of paint samples. In fact the witness had said that the paint was very similar but the sample was too small to be spectroscopically matched. This mistake falls far short of reversible error and such evidence goes to defendant Hicks against whom plaintiff otherwise failed to make a submissible case rendering the error if any harmless. In any case plaintiffs did not object to the statement when made and thus has not preserved it for review. Rule 84.13(a) V.A.M.R.

 Finally, plaintiffs argue the court erred in permitting plaintiffs' witness, the Highway Patrolman, to testify on cross-examination from his report, that the vehicles involved were skidding, when in fact he did not observe the accident.

Defendants Williams and Modglin argue that plaintiffs had elicited favorable hearsay testimony from the patrolman on direct examination and his hearsay testimony to the effect the report showed that all cars were "skidding" was admissible under the doctrine of curative admissibility. See *Young v. Dueringer*, 401 S.W.2d 165, 167–68[1] (Mo.App.1966). Ordinarily the use of curative evidence of the character offered here rests within the sound discretion of the trial court and we see nothing in this record which justifies reversal of the trial court's exercise of that discretion in admitting the evidence offered.

While there appears to be merit in defendants' contention that the evidence they sought to introduce was of the same hearsay character as that offered by the plaintiffs,[2] most significantly its admission was not harmful to plaintiffs. The evidence seemed to show that all cars *were skidding*, there was no contrary evidence and this fact does not appear inconsistent with

---

**2.** On direct examination plaintiffs' counsel inquired of the Highway Patrolman whether his report showed that any statements had been made of the plaintiff William Cato thus calling for a self-serving statement and hearsay testimony for the benefit of the plaintiff. The High-

way Patrolman testified that Cato had stated: "He slid across the road and hit us." He then asked for further hearsay testimony and from his report the officer testified that plaintiff had stated a car hit his car and kept on going.

plaintiffs' theory of the case. Plaintiffs' point is denied.

The judgment is reversed and cause remanded as to the defendant Williams, affirmed as to all other defendants.

WEIER, P. J., concurs.

McMILLIAN, J., dissents in separate opinion.

McMILLIAN, Judge (dissenting).

I respectfully dissent from the majority's holding that plaintiffs' made a submissible case against defendant Jacky Williams. The evidence indicated that defendant Williams was traveling at thirty-five (35) miles per hour or fifty-two (52) feet per second when he first saw the Cato automobile crossways in the road sixty feet ahead of him and the car was sliding back towards him. Assuming that Williams reacted normally to the danger presented, in three-fourths of a second his automobile would have travelled 39 feet. Although Williams immediately applied his brakes in an effort to avoid the accident, his automobile slid on the snowy pavement into the sliding Cato vehicle. Thus, it appears under the circumstances then existing, the majority opinion correctly found that the Williams automobile could not have stopped within the remaining 21 feet so as to avoid the accident. On the other hand the majority, without any evidence, concluded in the emergency situation confronting defendant Williams that Williams had sufficient time and distance, after discovering the Cato automobile, to have avoided the accident by swerving his automobile. At best defendant Williams' statement that, ". . . I assume I could have gotten around, I mean there was room to get around but putting on my brakes I slid into him" is highly speculative as to whether Williams could have avoided the accident with the on-coming, sliding Cato vehicle, by swerving. No evidence was adduced by plaintiffs as to how long or far it would have taken defendant Williams to swerve his automobile so as to avoid the accident. Consequently, taking into consideration the snowy condition of the road, the sliding movement of the Cato vehicle towards defendant Williams' automobile, and the fact that Williams had less than a half of a second to take some evasive action, I find no evidence to support a case against Williams. Therefore, I would affirm the judgment of the trial court sustaining defendant Williams' motion for a directed verdict because of the failure of plaintiffs to make a submissible case against him.