Marie C. PILLEY, Plaintiff–Respondent,

v.

K–MART CORPORATION,
Defendant–Appellant.

Marie C. PILLEY, Plaintiff–Appellant,

v.

K–MART CORPORATION, Defendant–Respondent.

Nos. 18141, 18152.

Missouri Court of Appeals,
Southern District,
Division One.

March 17, 1993.

Randy R. Cowherd, Robert W. Schroff, Grant Q. Haden, Schroff, Glass & Newberry, P.C., Springfield, for appellant/cross-respondent, K–Mart Corp.

Gary T. Nelms, William A. Wear, Jr., James R. Sharp, Wear, Karchmer & Nelms, Springfield, for respondent/cross-appellant, Pilley.

PARRISH, Chief Judge.

In No. 18141, K–Mart Corporation (defendant) appeals from a judgment entered in favor of Marie C. Pilley (plaintiff) for personal injuries sustained in a fall that occurred at a store operated by defendant. In No. 18152 (the "cross-appeal"), plaintiff appeals from the trial court's denial of her request for pre-judgment interest. This court affirms in both appeals.

Defendant contends that plaintiff failed to make a submissible case; that, therefore, the trial court erred in denying defendant's motions for directed verdict and motion for judgment notwithstanding the verdict.

> Upon review of this question the Court accepts as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregards contradictory evidence. *Community Title v. Roosevelt Federal S & L*, 796 S.W.2d 369, 371 (Mo. banc 1990); *Cope v. Thompson*, 534 S.W.2d 641, 644 (Mo.App.1976). The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony. *Lewis v. Envirotech Corp.*, 674 S.W.2d 105, 111 (Mo. App.1984).

*Georgescu v. K–Mart Corp.*, 813 S.W.2d 298, 299 (Mo. banc 1991).

On December 4, 1989, plaintiff drove from her residence in Republic, Missouri, to a store operated by defendant (the K–Mart store) on West Sunshine Street in Springfield, Missouri. She arrived at the K–Mart store "about 11:00 [a.m.], or 12:30, or maybe a little before, maybe 12:00 o'clock." She was alone. Plaintiff parked her car in the K–Mart store parking lot "[a]bout 20,

25 feet" from the door of the store. She walked from her car into the store.

Plaintiff took a shopping cart and proceeded to the department where she planned to shop. She shopped for "maybe a half hour," picked out several items to purchase, then "headed to the check-out." She explained what happened:

> Q. [By plaintiff's attorney]: What happened as you approached the check-out lane?
>
> A. [By plaintiff]: As I turned in, made a left turn there into the check-out, something happened and I landed on the floor, I didn't know what hit me.
>
> Q. What—did your body strike the floor?
>
> A. Yes.
>
> Q. And what part of your body hit the floor first?
>
> A. I guess my seat, I don't know, as I came down, and then I landed flat on my back and kind of hit my head on one of those racks that were there.

Plaintiff was stretched out on the floor. She described how she felt:

> Just shock, I mean I just blanked, I was in terrific pain, and I didn't know what happened to me. I was in total shock.

An employee of defendant asked plaintiff if she wanted a wheelchair. Plaintiff said that she did. She was helped from the floor and into a wheelchair. She remained in that area, "eight or 10 feet" from the check-out register, for about five minutes. She testified about what she observed:

> I just observed one of the employees coming to where I had fallen and wiping up something off the floor, whatever, and I figured that's what I fell on, whatever that was.

She saw the employee wipe up the substance on the floor with a paper towel and walk away. There were no "yellow cones or markers" or any indication that anything was wrong with the area prior to when plaintiff fell.

Other witnesses observed "a yellowish liquid" at the entrance to the check-out lane where plaintiff had fallen. One wit-

ness described the liquid as "apple juice, possibly." Another described a puddle, a liquid, "maybe pale yellow, something like that"; "probably six to eight inches, somewhere in there." The second witness, one of defendant's employees, had seen plaintiff being helped up by customers. She estimated that plaintiff was "[m]aybe a foot" from the puddle. She remembered getting paper towels from "under register 10" for someone to clean up the substance. She remembered that plaintiff's clothing was wet.

Plaintiff testified that nothing in her cart was broken when she fell; that there was nothing in the cart that was breakable. She was asked how she left the K–Mart store after her fall. She explained.

> Well, one of the employees wheeled me out to the car and I managed to get in it somehow, with a struggle, and the lady employee helped me in and was a little concerned if I could drive. I said, well, I'll check the brake and see if I can handle it, otherwise, no, which I did, and she was concerned and asked me to call, which I did when I got home.

Plaintiff refused medical treatment or transport by ambulance. She drove directly to her home. Other facts applicable solely to No. 18152 will be stated in the part of the opinion that addresses the points raised in that appeal.

### No. 18141

Defendant claims that plaintiff's evidence failed to show that any negligence of defendant "caused or contributed to cause any damage to plaintiff" (Point 1), and failed to show that defendant was negligent because the evidence did not show that defendant "had any notice of any dangerous condition prior to plaintiff['s] ... fall" (Point 2).

Defendant argues, quoting from *Fowler v. Terminal R.R. Ass'n of St. Louis,* 372 S.W.2d 497 (Mo.App.1963):

> [S]lipping is a result rather than a cause. It may be produced by negligence, one's own or another's, and it may occur in the absence of any negligence at all. It is a

common mischance invited by the ordinary act of walking....

*Id.* at 502. Defendant, in suggesting that there is a lack of evidence of its negligence, points to the language of *Cato v. Modglin,* 545 S.W.2d 307 (Mo.App.1976), quoting from *Wallander v. Hicks,* 526 S.W.2d 848, 850 (Mo.App.1975), regarding an appellate court's obligation in ascertaining if a submissible case was made before the trial court.

> [A]ppellate courts cannot "imagine the existence of evidence, when none in fact exists, or supply missing evidence, to flesh out an otherwise insubmissible case, nor can it spring inferences from nowhere upon which to predicate submissibility."

545 S.W.2d at 311.

Both *Cato* and *Wallander* are cases involving automobile accidents. *Cato* involved a multiple vehicle accident and *Wallander* involved a vehicle that struck a pedestrian. The principles enunciated in those cases are sound. Equally sound, however, and more apropos to this case are the more recent decisions in Missouri that this court is bound to follow in its review of slip and fall cases involving customers of "the 'self service' type store which is usual in modern retail merchandising"; stores in which "customers are invited to traverse the aisles and to handle the merchandise." *Sheil v. T.G. & Y. Stores Co.,* 781 S.W.2d 778, 780 (Mo. banc 1989). In addition to *Sheil,* the Supreme Court of Missouri decided *Georgescu v. K–Mart Corp., supra. Georgescu* also involved a slip and fall injury to a customer in a self-service type retail store. Another recent slip and fall case, although not one that occurred in a self-service retail merchandise establishment, is *Roberts v. Menorah Medical Center,* 777 S.W.2d 330 (Mo.App.1989). In *Roberts,* a visitor to a hospital slipped and fell on a wet floor in a hospital hallway. These cases explain the status of the law of negligence in Missouri with respect to slip and fall injuries sustained by customers in business establishments. This court finds that the principles enunciated in *Sheil, Georgescu* and *Roberts,* as hereafter set forth,

support the trial court's determination that a submissible case was made.

The K–Mart store at which plaintiff fell occupies a building that contains approximately 65,000 square feet. Its merchandise is displayed on shelves and racks. It is "mainly [a] self-service" retail store. There is a delicatessen in the front part of the store. The food items sold in the delicatessen include soft drinks and fruit juices. Customers are permitted to carry items purchased there, as well as food items brought into the store by them, with them throughout the store while they shop.

In *Sheil v. T.G. & Y. Stores Co., supra,* a customer fell on a box that was in the aisle of the store. There was no evidence as to how long the box had been on the floor or whether it had been placed there by a store employee or someone else. The court said:

> [I]t is reasonable to infer that the box contained merchandise that the store held for sale in the area in which the plaintiff fell. . . . The box in the aisle was a dangerous, foreseeable condition, and the store had the duty to use due care to protect customers against dangers of this kind. The jury could find from the evidence that the defendant had breached this duty.

781 S.W.2d at 780–81. The court found that there was a submissible case, pointing out "that some of the earlier cases are too restrictive of the jury's authority, at least in cases involving the 'self service' type store which is usual in modern retail merchandising"; and that "[t]he storeowner . . . must anticipate and must exercise due care to guard against dangers from articles left in the aisle." *Id.* at 780. It held that "the precise time [that the dangerous item was in the area] will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury." *Id.*

*Georgescu* involved a slip and fall accident in which a customer claimed that she had fallen on food that had been spilled on the store's floor although she had not seen the item on which she slipped. There were no witnesses to the fall. There was evidence from other witnesses that there had been "a spot of debris" on the floor where the customer fell "ten to fifteen minutes before her fall." 813 S.W.2d at 300. There was evidence that potato chips had been on the floor. *Id.* There was other evidence that an employee of the store had seen popcorn on the floor earlier (prior to when the customer who fell had arrived at the store) but had not removed what she had seen or otherwise barricaded it or issued any warning to the customer who fell. *Id.* Other witnesses testified that the substance on the floor was food—potato salad, baby food. *Id.* at 301. The court held that whether the customer's fall was caused by the presence of food spilled in the aisle of the store was a jury question; that this determination could be made without direct testimony as to what caused the customer to fall; that a submissible case was made based upon circumstantial evidence. *Id.* at 299–300.

Two cases that the court relied upon in finding that *Georgescu* was a submissible case were *Roberts v. Menorah Medical Center, supra,* and *Douglas v. Douglas,* 255 S.W.2d 756 (Mo.1953). The court described those cases as follows:

> In *Roberts v. Menorah Medical Center,* . . . plaintiff slipped and fell in a hospital hallway. She did not see anything on the floor prior to her fall. She described the fall by saying that her foot started "aeroplaning"; after the fall, she felt water on the floor. Several witnesses testified that there was water on the floor where she fell, but no one had seen her fall. Testimony varied as to the amount of water on the floor. Defendant asserted there was no substantial evidence that the condition of the water on the floor caused plaintiff to fall. The court stated defendant based its contention "upon the fact that [plaintiff] did not testify using the magic words that her feet were on a water covered surface at the time of the fall." . . . The judgment for plaintiff was affirmed. . . . In *Douglas v. Douglas,* . . . plaintiff testified that she saw nothing on the floor as she approached the spot where she fell in defendant's

place of business. After she took a few steps, her left foot "slipped on something" and she fell.... After the fall, she noticed a dark mark on the floor, there appeared to be a film on the floor, and she felt something sticky there. She testified she did not know what caused the mark on the floor made by her shoe and she did not know what was on the floor. The Court held plaintiff's evidence was sufficient to make a submissible case on the issue of causation, noting that plaintiff's inability to state exactly what substance on the floor caused her fall did not destroy the probative force of her other testimony which the jury could reasonably find to be sufficient.

813 S.W.2d at 300 (citations omitted).

This court holds that the question of whether plaintiff's fall was caused by the presence of the puddle of liquid in the checkout lane of defendant's store is a jury issue; that a submissible case as to the issues of negligence and causation was made. Defendant's points on appeal in No. 18141 are denied.

### No. 18152

This case was tried March 10, 11 and 12, 1992. Verdict was received, approved and filed on March 12. The verdict assessed damages of $200,000. It assessed 80% fault to defendant and 20% to plaintiff. On March 17, 1992, plaintiff filed a motion entitled "Plaintiff's Motion to Amend Judgment for Prejudgment Interest" by which she requested that she be awarded prejudgment interest at the rate of 9% per annum based upon an offer to settle her claim for $75,000 that was made on July 17, 1990. Plaintiff sought interest "from and after sixty (60) days from the date of July 17, 1990." The trial court heard the motion on March 24, 1992, and took it "under advisement." On March 25, 1992, plaintiff filed a motion entitled "Plaintiff's Motion to Amend Petition" by which plaintiff sought leave to "amend and supplement her petition" so as to add an allegation that she had made the settlement offer that was set forth in her prior motion and to add a

request in the prayer of the petition for "prejudgment interest from and after September 15, 1990 pursuant to Section 408.-040 R.S.Mo." On April 6, 1992, the trial court denied plaintiff's motions.

By her cross-appeal, plaintiff contends that the trial court erred in denying her motion for prejudgment interest (Point 1) and in holding that her pleadings were insufficient to permit her to recover prejudgment interest and, alternatively, that the trial court erred in denying plaintiff leave to amend her pleadings to request prejudgment interest (Point 2).

Plaintiff's request for prejudgment interest was made pursuant to § 408.040.2.[1] Section 408.040.2 states:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudgment interest as otherwise provided by law or contract.

It was enacted in 1987. *See* H.B. 700, 1987 Mo.Laws, p. 808. Prior to 1987, there was no provision for prejudgment interest on judgments in tort actions. There were, however, provisions for recovering prejudgment interest on accounts and on money due and payable by reason of written contract.

Section 408.020, RSMo 1986, provided for the recovery of prejudgment interest on certain obligations including "written contracts, and on accounts after they become

---

1. References to statutes are to RSMo Supp.1991 unless otherwise stated.

due and demand of payment is made." Defendant, in its brief, suggests that the pleading requirements that must be followed in order to recover prejudgment interest pursuant to § 408.020, RSMo 1986, should be applicable to requests for prejudgment interest on judgments in tort actions.[2]

The matter of prejudgment interest allowable by reason of § 408.020, RSMo 1986, was addressed in *Folk v. Countryside Casualty Co.*, 686 S.W.2d 882 (Mo. App.1985). In *Folk*, an insurance carrier denied an insured's claim. The insured obtained a judgment against the carrier on the policy. The judgment included interest, based upon § 408.020, RSMo 1986, from the date of the notice of loss. On appeal the carrier contended that the allowance of prejudgment interest was error "because it was not requested in [the insured's] pleadings." 686 S.W.2d at 884. This court's eastern district acknowledged that the statute "ha[d] been held to apply to insurance cases." *Id.* It then said:

> [I]n *Colletta & Sons, Inc. v. R.J. Stephens Drywall & Painting Co., Inc.*, 670 S.W.2d 114, 115 (Mo.App.1984), the appellant contended that prejudgment interest should not have been awarded since it was not specifically referred to in the body of a counterclaim although it was referred to in the prayer. This court held: "All of the facts necessary for an award of prejudgment interest were included in the body of the counterclaim and the prayer requested interest. That is sufficient to authorize an award of such interest under Sec. 408.020 [RSMo Supp.1984]...." [3] Implicit in this court's holding is the requirement that

the issue of prejudgment interest appear in the pleadings.

*Id.* at 884 (footnote added). The court pointed out that the petition in the case before it "prayed for the 'value of the aforementioned property loss, and for her costs therein expended'"; that it stated that demand for payment had been made but did not state the date when the demand was made. *Id.* at 885. Thus, all of the facts that were necessary in order to award prejudgment interest "were not included in the pleadings." *Id.* The court concluded that the trial court's "award of prejudgment interest was erroneous." *Id.*

This same principle was applied to allow prejudgment interest in *Parker v. National Foundation Life Ins. Co.*, 805 S.W.2d 195 (Mo.App.1991). There, the western district of this court held that the appellant was entitled to prejudgment interest because all facts necessary to award prejudgment interest were included in the pleadings before the court—the appellant had included in his pleadings the request for prejudgment interest and the date demand for payment had been made. *Id.* at 196–97.

The petition that is included in the legal file is "Plaintiff's First Amended Petition." Assumedly it is the pleading upon which plaintiff's case was tried.[4] It does not allege that plaintiff is entitled to interest. Its prayer seeks "damages against defendant in a sum that will fairly and justly compensate her for the above-stated losses together with court costs herein." The petition is the pleading by which the party who initiates a lawsuit sets forth his claim. Rule 53.01. It must include "(1) a short and plain statement of the facts showing

---

**2.** Neither party cited, nor did this court find, any *reported* Missouri cases that specify pleading requirements for recovering prejudgment interest in tort actions pursuant to § 408.040.2. Plaintiff has cited *Kilmer v. Browning*, 806 S.W.2d 75 (Mo.App.1991), in support of her claim for prejudgment interest, stating, "[P]rejudgment interest may be properly considered in a post-trial motion." *Kilmer*, however, is of no help in determining the prejudgment interest question in this appeal. In *Kilmer*, the prejudgment interest question was whether the judgment that the trial court entered had become a "final judgment" prior to when the trial court undertook to award prejudgment interest. This

court concluded that the trial court's judgment was not a "final judgment" at the time the trial court awarded prejudgment interest and, therefore, that the trial court had jurisdiction to determine the prejudgment interest question. *Id.* at 85–86. That is not an issue in this case.

**3.** The content of § 408.020, RSMo 1986, is the same as § 408.020, RSMo Supp.1984.

**4.** "The legal file shall always include, ...: the pleadings upon which the action was tried,...." Rule 81.12(a).

that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled." Rule 55.05.

A petition that seeks prejudgment interest by reason of § 408.040.2 is subject to the same requirements as one seeking prejudgment interest by reason of § 408.020, RSMo 1986. In order to recover prejudgment interest, a petition must state facts sufficient to authorize the award. There were no references to, nor a request for, prejudgment interest in plaintiff's petition. There was no statement of sufficient facts in the petition from which the amount of prejudgment interest allowable by § 408.-040.2 could have been calculated. The trial court committed no error by not awarding prejudgment interest. Point 1 of plaintiff's cross-appeal is denied.

■ Point 2 in plaintiff's cross-appeal contends that her petition's demand for "damages ... that will fairly and justly compensate her for the above-stated losses" sufficed as a demand for prejudgment interest because it complied with the requirements of § 509.050.1(2) that if a petition seeks recovery of money "no dollar amount or figure shall be included in the demand except to determine the proper jurisdictional authority, but the prayer shall be for such damages as are fair and reasonable." [5] Alternatively, plaintiff contends, by her Point 2, that "the trial court abused its discretion in denying plaintiff's post-trial motion for leave to amend her petition to make a specific demand for prejudgment interest and to set forth facts showing she was entitled to such relief." Plaintiff argues that her request to amend her first amended petition should have been granted because "leave [to amend] shall be freely given when justice so requires." Rule 55.33(a).

The first part of plaintiff's Point 2 is denied for the reasons given in denying Point 1 of the cross-appeal. The only issue

for resolve with respect to plaintiff's Point 2 is whether the trial court abused its discretion by denying plaintiff's motion to amend her petition.

Permission to amend rests in the trial court's discretion, which will not be disturbed on appeal unless there is a showing that such discretion has been palpably and obviously abused. *S___ v. W___*, 514 S.W.2d 848 (Mo.App.1974); *Kallenbach v. Varner*, 502 S.W.2d 446 (Mo.App. 1973).

*DeArmon v. City of St. Louis*, 525 S.W.2d 795, 802 (Mo.App.1975).

Factors which the trial court should consider are: hardship to the moving party if leave to amend is denied, the reasons for the moving party's failure to include the new matter in its original pleading and the injustice resulting to the party opposing the motion should it be granted. [6] Wright and Miller, [Federal Practice and Procedure], § 1487 at 428 [ (1971) ].

*Id.*

Plaintiff, in her brief in her cross-appeal, offers, in explanation of her failure to include a request for prejudgment interest in her pleadings, the assessment: "Since prior to jury verdict the propriety of an award of prejudgment interest is purely speculative, plaintiff did not feel it was necessary to include a specific reference to it in her petition before trial."

Apparently, the trial court did not find this to be a compelling reason to grant the request to again amend plaintiff's petition. Considering that the request was made March 25, 1992; that the case had been filed since July 17, 1990; that the docket sheets reflect that there had been extensive and active discovery conducted; that subsequent to that discovery, on October 8, 1991, "by agreement" plaintiff had been permitted to file a first amended petition; that the trial was conducted on March 10, 11 and 12, 1992; and that plaintiff did not move to amend her petition until March 25,

---

**5.** Rule 55.05, as amended May 22, 1987 (effective January 1, 1988, with a notation at the time of the amendment that could be followed after July 1, 1987), includes the same language as that quoted from § 509.050.1(2); however, Rule

55.05 limits the request "for such damages as are fair and reasonable" in lieu of a request for a stated amount of damages to "actions for damages based upon an alleged tort."

1992, after defendant's post-trial motions had been filed and after a previous Motion to Amend Judgment for Prejudgment Interest had been filed, this court does not find that the trial court abused its discretion by denying plaintiff's request to again amend her petition.

This court does not find that any hardship plaintiff may have experienced by reason of the trial court's denial of her motion to amend her petition exceeded any injustice that would have befallen defendant, at the late date when the request to amend was made, had it been granted. Once a lawsuit has reached the point where the issues upon which a plaintiff sought to recover a money judgment have been tried to a jury, it is not unreasonable for a defendant to expect remaining proceedings to be founded in questions of law. That is part of the finality to which all parties to an action are entitled. This court does not find that the trial court's denial of plaintiff's motion to amend her petition amounted to a palpable and obvious abuse of discretion. Plaintiff's Point 2 is denied. The judgment is affirmed in appeals No. 18141 and No. 18152.

CROW, P.J., and SHRUM, J., concur.