Elizabeth H. STANFILL,
Plaintiff-Appellant,

v.

CITY OF RICHMOND HEIGHTS,
Missouri, and Ronald Murray,
Defendants-Respondents.

No. 39197.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 23, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 16, 1979.

As Modified Jan. 15, 1980.

Robert G. Schwendinger, Barnes, Schwendinger, Riley & O'Reilly, Clayton, for plaintiff-appellant.

Joseph H. Mueller, Mark F. Haywood, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for defendants-respondents.

STEPHAN, Presiding Judge.

This wrongful-death action arises from an intersectional collision between the vehicles of plaintiff's husband, William Stanfill, who was killed in the accident, and defendant City of Richmond Heights. The City vehicle was being driven by an employee, defendant Ronald Murray. Plaintiff's verdict-directing instruction predicated defendants' liability on Murray's failure to keep a careful lookout, driving at an excessive speed and violation of a traffic signal. Defendants charged that William Stanfill was contributorily negligent for failure to keep a careful lookout or failure to slacken his speed when the reasonable likelihood of a collision could have become apparent through the exercise of the highest degree of care.[1] The jury returned a verdict for defendants and plaintiff appeals from the judgment entered thereon, claiming that the submitted theories of contributory negligence lack evidentiary support. We find such support in the record and accordingly affirm the judgment.

In considering whether an instruction was supported by the evidence at trial, we view all the evidence in the light most favorable to the offering party, giving that party the benefit of all favorable inferences reasonably drawn therefrom and disregarding evidence to the contrary. *Gruhala v. Lacy*, 559 S.W.2d 286, 289 (Mo.App.1977); *Searcy v. Neal*, 549 S.W.2d 602, 603 (Mo. App.1977); *Hood v. Heppler*, 503 S.W.2d 452, 455 (Mo.App.1973). Although defendants' evidence conflicts sharply with that of plaintiff in certain material aspects (particularly with regard to Murray's speed and the part of the City's vehicle first struck by the Stanfill vehicle), we accept that evidence as true for the purpose of this consideration, for a party is entitled to an instruction on the theory of his own evidence. *Welch v. Sheley*, 443 S.W.2d 110, 118 (Mo. 1969). The issue of negligence is ordinarily a question for the jury and is always so when the material facts are disputed, or, being undisputed, are reasonably subject to different interpretations. *Burch v. King*, 549 S.W.2d 919, 922 (Mo.App.1977). Each element of a disjunctive instruction, such as that submitted by defendants, must be supported by substantial evidence and lack of such support on any theory submitted renders the instruction erroneous. MAI 17.02 Note on Use No. 2; *Saupe v. Kertz*, 523 S.W.2d 826, 830 (Mo. banc 1975). Although there is ample evidence from which the jury could have found for the plaintiff and against the defendants, it is not for this court to weigh the evidence. The question of whether a verdict is against the weight of the evidence is for the trial court alone. An appellate court may intervene only where there is a complete absence of substantial evidence upon which to base the verdict. *Stevens v. Wetterau Foods, Inc.*, 501 S.W.2d 494, 496 (Mo.App.1973); *Wilson v. Concordia Farmers Mutual Insurance Company*, 479 S.W.2d 159, 161 (Mo.App. 1972).

We relate the material evidence in the light of the above principles. The collision occurred at the intersection of Manchester and Big Bend, in St. Louis County, shortly after 10:00 p. m. on August 29, 1975. Both streets are busy through streets, Big Bend running north-south and Manchester east-west, and the intersection is controlled by electric signals. Both streets are five lanes wide at the intersection, with two through lanes in each direction and a left-turn lane

---

[1]. The instruction is an appropriate combination of MAI 32.01 (contributory negligence), 17.04 and 17.05.

in the center. On the night of the accident, the weather was clear and the road dry. William Stanfill was driving alone in a Volkswagen van in the curb lane of east-bound Manchester at a speed of approximately 30 miles per hour. Defendant Murray, a private in the Richmond Heights Fire Department, was driving in the inner south-bound lane of Big Bend in a large fire rescue truck in response to an emergency call. Both the siren and flashing light atop the cab of the truck were in operation as the truck neared the intersection; before the truck entered the intersection, its "yelping" siren and air horn were activated. Murray testified that he had reduced his speed to 30 miles per hour shortly before he entered the intersection. It is undisputed that the light was green for traffic on east-bound Manchester and red for south-bound traffic as the two vehicles entered the intersection. There were a number of vehicles stopped at the intersection. Murray passed two automobiles stopped for the light on south-bound Big Bend. Stanfill also passed two stopped autos as he entered the intersection, but the only witness who could clearly remember their location placed them in the left-turn lane rather than in the other through lane of traffic. The two vehicles collided at the intersection of the curb lane of east-bound Manchester and the inner lane of south-bound Big Bend. According to the testimony of Murray and Raymond Stoverink, a fire department captain and a passenger in the cab of the truck, the left front of Stanfill's van first struck the truck over the right rear axle; the van spun around and hit the truck again in the right front. The truck veered to the left and struck two vehicles stopped in the left-turn lane of north-bound Big Bend.

■ We consider first the question of whether Stanfill could have avoided the collision by slackening his speed after he could have realized, using the highest degree of care, that there was a reasonable likelihood of a collision with the truck. At trial, plaintiff attempted to establish the point at which Stanfill first saw the truck, approaching perpendicularly from his left. Based on Stanfill's speed (30 miles per hour or 44 feet per second), the judicially recognized reaction time of ¾ second (see, e. g., *Shelton v. Bruner*, 449 S.W.2d 673, 677 footnote 4 (Mo.App.1969)), and the point at which Stanfill began to brake (approximately 7 feet from the impact), plaintiff concluded that Stanfill was no more than 40 feet from the point of impact when he first saw the truck. Plaintiff's expert witness testified that a vehicle travelling 30 miles per hour would require approximately 73 feet to stop under the road conditions existing at the time of the collision.[2] Therefore, argues plaintiff, Stanfill simply did not have time to take effective precautionary action. The point at which Stanfill first saw the truck is irrelevant in this case, however. Submission on this theory requires substantial evidence from which a jury could find or reasonably infer that Stanfill had the time and means, considering the position, movement and speed of the vehicles, to have avoided the truck once he had actual *or* constructive knowledge of a reasonable likelihood of collision. *Wallander v. Hicks*, 526 S.W.2d 848, 852–853 (Mo. App.1975); *Robinson v. Gerber*, 454 S.W.2d 933, 936 (Mo.App.1970). The critical measurement then is Stanfill's distance from the point of impact when, by exercising the highest degree of care, he could have seen the approaching rescue truck in time to have taken appropriate protective measures.

■ Plaintiff contends that there was no evidence that Stanfill could have seen the truck before he actually did and that, in fact, it would have been impossible for him to have done so in time to take precautionary action because his view of the truck was obstructed by an automobile showroom located on the northwest corner of the intersection. We do not agree. It is apparent from a scale drawing of the intersection

---

2. During the reaction time of ¾ second, the vehicle travels 33 feet. The stopping time, after the brakes are applied, is approximately 40 feet on an ideal, dry surface.

that Stanfill's view of the rescue truck was totally unobstructed by the showroom on the corner when he was at a distance of more than 95 feet from the point of impact.[3] Furthermore, there was testimony from a witness, standing on the east side of Big Bend approximately 300 feet north of the intersection, that he could see the Stanfill van, nearing the intersection from the west, through the plate glass windows of the showroom for a "fraction of a second" before it cleared the corner of the building. We believe it reasonable to infer that the windows of the showroom similarly could have allowed Stanfill to glimpse the truck at an even greater distance and could have provided him the same "fraction of a second" more time to react to the truck. Stoverink's testimony indicates that, because of the height of the two vehicles, he had an unobstructed view of the Stanfill van over the lower automobiles at the intersection after the view between the two was no longer blocked by the corner showroom. It is a reasonable inference, supported by pictures of the two vehicles (plaintiff's exhibits), that Stanfill could have had a similar view of the truck, approaching with its sirens and flashing light in operation, at least at a distance of 95 feet from the point of impact. Stoverink's and Murray's testimony indicates that the Stanfill van, in striking the truck above the rear wheelbase, barely failed to clear the truck. The van therefore would have required but a slight diminution of speed to have avoided the collision. See *Schmittzehe v. City of Cape Girardeau*, 327 S.W.2d 918, 924 (Mo.1959). As noted, plaintiff's evidence indicates that Stanfill began to apply his brakes approximately 6 or 7 feet before the collision, though he had at least 95 feet to react and brake and could, according to plaintiff's evidence, have stopped altogether within 73 feet. In short, we find this to be ample evidence to support a finding that William Stanfill could have avoided the collision by slackening his speed after he could have become aware of a reasonable likelihood of collision with the truck.

To make a submissible case on the second theory, failure to keep a careful lookout, defendants must show that Stanfill saw, or in the exercise of the highest degree of care should have seen, the rescue truck in time to have taken effective evasive action. *Kaelin v. Nuelle*, 537 S.W.2d 226, 233 (Mo. App.1976); *Wallander v. Hicks*, 526 S.W.2d 848, 851 (Mo.App.1975); *Corbin v. Wennerberg*, 459 S.W.2d 505, 507 (Mo.App.1970). The proof required under this theory of the instruction is, of course, quite similar to that required under the theory discussed supra; we believe the discussion on that theory to be in all respects applicable to this point and we regard the evidence there discussed to be sufficient to establish a submissible defense on this theory.

We would simply add, on this point, that we believe that the evidence adduced at trial concerning the operation of the truck's

---

**3.** Plaintiff introduced a blow-up of the scale drawing of the intersection from the police report made following the accident. Two of plaintiff's witnesses attested to its accuracy. The corner of the building which obstructed Stanfill's view is approximately 62 feet north and 33 feet west of the point at which the vehicles collided. The jury could reasonably have found that the two vehicles were travelling at the same speed, 30 miles per hour. We will therefore assume, only for the sake of this calculation, that they were at all times equidistant from the point of impact. If an isosceles right triangle is drawn with legs of 95 feet extending north and west from the point of impact, the hypotenuse of the triangle, representing the sight-line between the two vehicles, will pass through the corner point. Therefore, at any distance less than 95 feet, the two vehicles are intervisible. As indicated, defendant Murray and Stoverink testified that the front of the van struck the truck above the right rear axle. Therefore, although the truck was travelling at the same speed as the van, it was at all times closer to the point of the collision than the van, and was visible to Stanfill around the corner when Stanfill was at an even greater distance than that produced by the above calculation. The exact distance cannot be calculated because the distance from the front of the truck to the point of impact on the truck is not indicated in the record, but it is safe to say that Stanfill's view of the truck was not obstructed by the building when he was more than 95 feet from the point at which the accident occurred.

siren during its approach to the intersection would alone be sufficient to establish such a case. Although it cannot be reasonably said that the siren alone could have warned Stanfill of a "reasonable likelihood" of a collision with the truck, it could reasonably be found that the siren apprised, or should have apprised, Stanfill of the truck's presence long before the truck was visible to him around the corner of the showroom.[4] We do not agree with plaintiff's contention that proof of Stanfill's ability to hear the siren requires testimony from a witness who heard it from the same location and under the same circumstances as did Stanfill. Proof of a party's failure to keep a careful lookout must ordinarily be made through circumstantial evidence and can be accomplished with any substantial evidence from which a jury can find or reasonably infer the elements of the allegation. *Powell v. Watson*, 526 S.W.2d 318, 324 (Mo.App. 1975); *Watterson v. Portas*, 466 S.W.2d 129, 131 (Mo.App.1971). In this case, one of plaintiff's witnesses, seated in her car at the intersection, testified that she could hear the siren when the truck was "pretty far" away. Another witness, standing at the side of Big Bend approximately 300 feet north of the intersection, testified that the siren was "extremely loud" and estimated that he could hear it from a distance of slightly less than half a mile. We believe these facts would permit a jury reasonably to infer, based on personal experience with emergency sirens, that Stanfill, though driving with his windows up and radio on, could have heard the truck before he could see it. As shown, this clearly would have allowed him time to have taken reasonable precautionary action. We therefore believe that the evidence about the operation and volume of the siren, alone or in conjunction with the evidence discussed supra, supports the submission of Stanfill's failure to keep a careful lookout.

■ Finally, plaintiff urges that this court, in the interest of fairness, abolish the standard of contributory negligence in favor of some form of comparative negligence. We decline to consider the issue, in view of the Missouri Supreme Court's most recent pronouncement on the matter, *Epple v. Western Auto Supply Co.*, 557 S.W.2d 253 (Mo. banc 1977), wherein the court refused to adopt the rule of comparative negligence. Such a change in the fundamental theory of the law is not to be instituted by a court of error.

The judgment is affirmed.[5]

STEWART and KELLY, JJ., concur.

---

4. A driver's duty to take evasive action arises only when the potential danger becomes actually or constructively apparent. *Robinson v. Gerber*, 454 S.W.2d 933, 936 (Mo.App.1970). In this context, we can see no logical reason to distinguish between visual perception of the dangerous situation and auditory perception of that situation through an audio signal, such as an emergency siren, which clearly and unmistakably calls for some form of precautionary response.

5. On April 10, 1979 this cause was transferred to the Supreme Court of Missouri by order of the Supreme Court for the purpose of considering whether the present law of contributory negligence should be abrogated and a form of comparative negligence adopted. On November 14, 1979 in *Steinman v. Strobel and Schnieders*, 589 S.W.2d 293, the Supreme Court of Missouri declined to abrogate the law of contributory negligence and adopt a form of comparative negligence. Accordingly, the Supreme Court of Missouri concluded that the transfer was improvidently granted and retransferred the cause to the Missouri Court of Appeals, Eastern District, for appropriate disposition. The opinion of this court was thereafter reinstated.