Illona SANDIFER, Respondent,

v.

Wayman A. HAMILTON, Otis Love and Robert Bouckhout, and Wayman T. Hamilton and Inez Hamilton, Appellants.

No. WD 31857.

Missouri Court of Appeals, Western District.

Dec. 22, 1981.

Spencer J. Brown and Thomas M. Howell, Kansas City, for the Hamiltons; Deacy & Deacy and Howell, Raymond & Raymond, Kansas City, of counsel.

Max W. Foust and G. Spencer Miller, Kansas City, for Otis Love and Robert

Bouckhout; Morris & Foust, Kansas City, of counsel.

John C. Cozad and John R. Loss, Kansas City, for Illona Sandifer; Field, Gentry, Benjamin & Robertson, Kansas City, of counsel.

Before CLARK, P. J., and PRITCHARD and WASSERSTROM, JJ.

PRITCHARD, Judge.

For personal injuries suffered in a collision between a Volkswagen and a Cadillac on State Line Road between Kansas City, Missouri, and Johnson County, Kansas, respondent received a verdict and judgment thereon for $50,000 against appellants Wayman A. Hamilton, Love and Bouckhout. The jury, pursuant to instructions, apportioned the fault against Wayman A. Hamilton, 50%, and Love and Bouckhout, 50%. Love and Bouckhout had judgment upon Wayman A. Hamilton's cross-claim against them. Wayman T. and Inez Hamilton had judgments against them on their intervenor claim against Love and Bouckhout for medical expenses and loss of services of their then 17 year old son, Wayman A. Hamilton.

Wayman A. Hamilton claims that the court erred in overruling his motion for directed verdict and his motion n. o. v. because respondent failed to support any submission upon which she could ground a recovery against him. Respondent submitted only a failure to keep a careful lookout against Wayman A. The facts are these: On October 14, 1974, respondent was a passenger in a Volkswagen driven by Wayman A. north on State Line Road. No other passengers were in the car. The Volkswagen and a southbound Cadillac driven by Love, who was employed by Bouckhout, collided, after which Wayman A.'s car collided in the southbound lane with a vehicle being driven by Mary Bryan.

Respondent testified that Wayman A.'s northbound car was in its proper northbound lane east of the double yellow center line when the collision occurred. She could remember no other northbound vehicles.

Wayman A.'s attention was not distracted nor diverted from the operation of his vehicle. Respondent saw the Cadillac a split second before the impact, at which time its left front fender was over the double yellow center line and into the northbound lane on the wrong side of the road, and its left front fender struck in the middle of the driver's side of the Volkswagen. Wayman A. did not swerve prior to the collision. Respondent could not give the speeds of either vehicle.

Mary Bryan's car, going southbound, was passed on its right side by the Cadillac. She had an unobstructed view of it from that point up to where the collision took place, and she saw it move from the right-hand southbound lane into the inside southbound lane into collision with the Volkswagen. The Cadillac's two left tires crossed the double yellow center line, and the collision occurred east of the center line and in the inside northbound lane. Although she had not seen the Volkswagen prior to collision, she placed it in the northbound lane east of the center line. The Cadillac was going in excess of 30 to 35 miles per hour when it passed her just before the collision.

Darren Bouckhout, then age 11, riding in the back seat of the Cadillac, first saw the Volkswagen when it was about one or two car lengths from him, about 26 feet, and its speed was about 35 miles per hour. It drifted onto the side of the Cadillac to the right, and its left front fender hit the left side of the Volkswagen. The Cadillac was going about 30 miles per hour. According to Darren, a TV set in the rear seat area of the Cadillac was not on. When he first saw the Volkswagen, it was in its proper lane, about six inches east of the two yellow lines, and the Cadillac was being driven down the street (south) about a foot or a foot and a half from the yellow line.

Otis Love was driving the Cadillac at a speed of 25 to 26 miles per hour when the collision occurred. He was in the southbound lane next to the center line when he saw the Volkswagen east of the center line coming at an angle toward the Cadillac

probably a car length away. According to Otis, the collision happened in the west (southbound) lane. At that time Otis "swerved out real fast, and moved two and a half or three feet." In his deposition, Otis gave that distance as "every bit of four feet". According to him, he was not going over 26 miles per hour because over that speed would interfere with the television in the back seat which Darren was watching. There was no car immediately to the right of the Volkswagen just prior to the collision.

Wayman A. Hamilton testified on deposition: "Q. When you first noticed the car that you had the first accident with, where was that car in relation to your car when you first saw the car that you had the first accident with, how far away from you was it? A. About a foot. Q. You didn't see it at all before that time? A. No." At trial he testified that he was driving northbound on State Line in the lane closest to the center line at a speed of 30 to 35 miles per hour. There was traffic moving in the lane to his right, and a few cars behind and in front of him. He saw something black coming with his left eye, and the black object struck his automobile, but he could not say what part was hit. He repeated his deposition testimony that he saw the car when it was about a foot away from him and did not see it before that time, and he did not swerve either to his left or to his right.

■ Appellants Hamiltons' Points I and II, attacking the sufficiency of the evidence to support the verdict and three instructions submitting Wayman A.'s failure to keep a careful lookout may be considered together, as they have done. It is true as these appellants say, citing *Shelton v. Bruner*, 449 S.W.2d 673 (Mo.App.1969), that in a lookout case, there must be substantial evidence that defendant could and should have seen plaintiff in time thereafter to have taken precautionary action and to have the means and ability to avoid a collision not only by mechanical appliances such as steering apparatus with which to swerve, but also the existence of sufficient time and

distance, considering the movements and speeds of the vehicles to take effective action in avoidance. So also in other cases cited: *Miller v. St. Louis Public Service Company*, 389 S.W.2d 769, 772 (Mo.1965), where the evidence was found to be sufficient that a bus driver had time and distance to have sounded a warning or swerved and avoided striking plaintiff; *Stegall v. Wilson*, 416 S.W.2d 658 (Mo.App. 1967), where there was no evidence as to the maneuverability of a motor scooter, or the distance in which it could be stopped at its speed as would support a contributory negligence instruction on failure to keep a lookout; and *Powell v. Watson*, 526 S.W.2d 318 (Mo.App.1975), where there was no evidence that a decedent could have seen a situation of peril in an intersection sooner than he did.

■ Appellants argue that the three witnesses, plaintiff, Wayman A. and Bryan, who testified that it was Love who was on the wrong side of the road, were unable to give testimony as to time or distance between the vehicles when Love approached and crossed the center line, and thus there was no basis to submit the failure of Wayman A. to keep a careful lookout. They also point out that Love testified that when the vehicles were one or two car lengths apart, they were each on the proper side of the center line, and Darren Bouckhout testified similarly and estimated the distance to have been 26 feet when he first became aware of the Volkswagen. Appellants seize upon this lack of evidence as to time and distance separating the two vehicles, and attempt to bolster it with the testimony of witness Sergeant Robert H. Wells (who was called by defendants Love and Bouckhout). Wells used the combined speed and distance of and between the two vehicles, 65 miles per hour or 95.55 feet per second, and 26 feet, and concluded that the vehicles would collide before either driver could react— within ¼ to ³⁄₁₀ of a second. The trial court properly took judicial notice of the average reaction time of a motor vehicle operator as being ¾ second. The trouble with this argument is that the jury was not bound to

believe the testimony of Darren Bouckhout that the distance between the vehicles at the time a collision was imminent as being 26 feet, and that distance is necessary to give any validity to Sergeant Wells' testimony as to the inability of either driver to take evasive action. See *Carlson v. St. Louis Public Service Company*, 358 S.W.2d 795, 800 (Mo.1962); and *Robertson v. Grotheer*, 521 S.W.2d 452, 457 (Mo.App.1975), and cases cited. The argument ignores Love's testimony that when the collision of the two vehicles was imminent he was able to swerve the Cadillac two and one-half to three feet away from the center line. The jury was thus entitled to infer that if Love could swerve his vehicle under the circumstances and *before* the collision, Wayman A., had he been keeping a careful lookout, could have done the same, and if he had done so, the collision would have been avoided. In other words, the jury could find that the two vehicles were farther apart than the 26 feet mentioned in evidence, if as he testified, Love was able to swerve 2½ to 3 feet. The photographs of the vehicles show that there was slight damage to the left front of the Cadillac, and, although there was extensive damage to the entire front-end of the Volkswagen, the jury could infer from the damage to its left fender that it also had slight damage to its left. Additionally, there was testimony that the left front fender of the Cadillac came into contact with the middle left front of the Volkswagen. Undoubtedly, the extensive damage to the entire front of the Volkswagen, and its right side, as shown by the photographs, was occasioned by the second collision with Mary Bryan's vehicle. Furthermore, it is established by case law that "It is too generally and well known to require formal proof that present day automobiles respond quickly and accurately to the touch of a driver's hand on the steering wheel. The necessary impulse may be applied in an instant." *Brown v. Callicotte*, 73 S.W.2d 190, 193 (Mo.1934); *Kaelin v. Nuelle*, 537 S.W.2d 226, 235 (Mo.App.1976); and see *Jenkins v. Jordan*, 593 S.W.2d 236, 239[5, 6] (Mo.App.1979). Thus, a submissible case of Wayman A. Hamilton's negligence in failing to keep a careful lookout was made, and the same evidence supports the giving of the three instructions on the submission. Points I and II are overruled.

Appellants, however, raise other issues. They claim that respondent is precluded from taking advantage of Love's testimony that he was able to swerve because she was conclusively bound to a theory of recovery based upon the fact that the collision occurred as Wayman A. drove in his half of the roadway and Love drove in the wrong half of the roadway. It is not exactly clear what appellants mean by this assertion, and it is tenuous at best. It seems that appellants are contending that because respondent testified that Love was on the wrong side of the road, and did swerve 2½ to 3 feet, she cannot say that Wayman A.'s ability to perceive the danger of a collision and react to it was comparable to Love's. For Love's negligence, respondent submitted that he was either on the wrong side of the road or he failed to keep a careful lookout, a submission which is not here challenged. Love's testimony is not inconsistent with respondent's theory as to the negligence of Wayman A. (in failure to keep a lookout), and she may therefore take advantage of it. *Price v. Nicholson*, 340 S.W.2d 1, 5 (Mo. banc 1960); and *Migneco v. Eckenfels*, 397 S.W.2d 682 (Mo.1965), where plaintiff submitted his case solely on humanitarian negligence in failing to stop or swerve, and he was allowed to take advantage of the testimony of defendant and his witness as to speed and distance, although plaintiff's testimony and that of the witness were contrary as to who was on the wrong side of the road—a fact which was not at war with plaintiff's theory of recovery. In *Hecker v. Schwartz*, 426 S.W.2d 22 (Mo.1968), cited by appellants, plaintiff submitted that defendant, Longinette, failed to keep a careful lookout, or drove at an excessive speed or drove too close to the center line. She testified, as her theory of recovery, that Longinette drove on his own side of the roadway, and the collision occurred when co-defendant Gage (who was absolved by the jury), crossed into the wrong half of

the roadway, and the court held that her positive testimony in that regard did not give rise to a duty on Longinette's part to reduce speed, swerve or take other evasive action (but it was held that Longinette had a submissible duty to keep a careful lookout). A reading of the *Hecker* opinion leads to the conclusion *only* that plaintiff there did not make a submissible case against Longinette on his failure to reduce speed, swerve or take other evasive action in view of plaintiff's testimony that he was on his side of the road because of a lack of duty in that circumstance. It is not an "at war" theory, but merely a case of failure to establish negligence under plaintiff's testimony.

■ Appellants assert that the verdict of the jury is violative of the "physical facts" rule, and relies for the contention upon the testimony of Officer Wells which was based upon the testimony of Darren Bouckhout as to estimated distance between the vehicles, 26 feet, and the estimates of speeds given by witnesses, to arrive at a conclusion that there was insufficient opportunity for the two drivers to take evasive action to avoid the collision. That testimony was not binding upon the jury which could find, from the fact that Love did swerve to his right 2½ to 3 feet, that Wayman A. could have done likewise. There are no conclusive matters of physical impossibility in this case as were present in appellants' cited case of *Ochs v. Wilson*, 427 S.W.2d 748 (Mo.App. 1968). These additional issues are ruled against appellants.

■ The jury assessed damages between defendant Wayman A., 50%, and defendants Love and Bouckhout, 50%, pursuant to Instruction No. 27, on a finding that their fault was equal. Wayman A. argues that there was no evidence to support an apportionment of fault because he was not negligent. The evidence and holding above is contrary to his contention, and the giving of Instruction No. 27 was not error.

The judgment is affirmed.

All concur.