**Patricia LEACHMAN, Appellant,**

v.

**NORTHERN ASSURANCE COMPANY OF AMERICA, Respondent.**

No. WD 38021.

Missouri Court of Appeals, Western District.

April 21, 1987.

Ronald M. Sokol, of counsel, St. Joseph, for appellant.

Wendell E. Koerner, Jr. and Scott M. Crockett, of counsel, Brown, Douglas and Brown, St. Joseph, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

PRITCHARD, Presiding Judge.

Pursuant to a jury verdict, judgment was entered against appellant for damages to her residence at 206 North Noyes Boulevard, St. Joseph, Missouri, under an "all

risk" Homeowner's insurance policy issued by respondent.

Appellant's residence is located at the intersection of north-south Noyes Boulevard and east-west Francis Street. The house faces east on Noyes. Immediately to its north is an alley which slopes rather steeply from west to east, a surveyor testifying that from 26th Street two blocks west, the difference in elevation drops 68 feet down to Noyes, which also slopes downhill toward the appellant's residence.

On the evening of June 7 and early morning of June 8, 1984, there was a very heavy rain in St. Joseph. John S. Creal, appellant's expert professional engineer, testified that he had never seen anything like the rain and the flooding that resulted in the 17 years he had lived in St. Joseph. The Superintendent of Streets was at the intersection in the evening of June 7 and he could not get through because of the water covering it and "it looked like the Colorado River or something like that." Evelyn Nash, who lives to the south across Frances at 2720 described Noyes as "it was like a small river, there was water coming out like a fountain from her basement toilet stool", and her entire basement was flooded with about a foot of water. James Robertson's house, east of Noyes and on the north side of Francis at 2805, received extensive flooding and he lost the west wall of his basement.

Appellant had been attending a birthday party in her honor at her other home at 417 North Noyes where her son lived on the evening of June 7. Pursuant to a call from Richard Gregory who lived with her at 206 North Noyes, and whom she treated as an adopted son, she returned to her home in the early morning hours of June 8. On arriving, appellant found water and broken glass from the windows in the basement, shelves containing bottles of liquor along the west wall were overturned, and the piano and the furniture were standing in about 3 or 4 inches of water. Gregory testified substantially to the same observations, and both testified that there was no water in the basement area when they had coffee there on the morning of the 7th, and

Gregory testified there was no dampness there during the daytime. It was raining when he returned home at about 9:00 p.m., but there was no water in the garage on the north side. When he got out of bed about midnight to use the basement bathroom, he was standing in water on the floor. He began to pick up light furniture, and then noticed that the basement window had been broken, but there was no yard debris, mud or foreign objects present.

The next morning Gregory inspected the house and found that there was broken glass in the extreme southwest window well. The ground and lawn looked good and normal, there were no gullies, ruts or debris deposited in the yard, and there was no mud or water line on the bricks of the house. A garden hose which was normally stored underneath a kitchen window, wrapped around a water pump, was found lying across the patio over by the basement window. The last time Gregory had seen the hose it was wrapped around the pump.

At about 8:00 a.m., on June 8, at appellant's request, Gregory contacted the insurance agency where he spoke to a woman and told her that there were broken windows, and that it looked like somebody had tried to break into the house and somebody had been messing with the patio door. Gregory photographed what appeared to be pry marks on the door.

Jay Vocke, the insurance adjuster, investigated the damage on June 13, 1984, accompanied by Gregory. He viewed the basement area and the broken window, which he photographed, on the west side of the house, and was taken to the garage and shown a bucket of glass, pieces of furniture and broken liquor bottles. At that time, Vocke told Gregory that there would be a problem with coverage because his description of the water entering through the window well and rolling down into the basement was surface water not covered by the policy. Vocke spoke with appellant for the first time on October 9, 1984, when he was shown the pry marks on the patio door. The two discussed the fact that John Creal, as structural engineer, had been hired by appellant to inspect the property,

making reports, copies of which Vocke later received. After reviewing the reports, Vocke told Gregory that they did not find anything to objectively indicate that the damage was other than from surface water.

Creal testified at trial for appellant as an expert witness. He had done inspections of the premises on September 22 and October 30, 1984. He noticed pry marks on the patio door, and visual examination outside indicated nothing whatsoever that there had been exterior flooding around the foundation level up next to the house. He had inspected a house second from the corner east of Noyes the day after the flood. He measured the difference in elevation of the water level of that house and that of the window well rim of appellant's house and found the latter to be nine inches higher. Asked to assume that muddy water comes up against a brick house similar to the one at 206 North Noyes leaving dirt or mud lines, and assuming three months had gone by, would the mud lines have faded in that time period. He answered that there would be evidence of mud lines, and when he inspected the house in September 1984, he found none.

Creal inspected the basement panelling and found that water had been standing at a depth of about 2½ inches. He did not observe any mud or grease staining on the panelling indicating a sewer backup. Apparently, the broken windows had double strength glass. Creal testified that it would take 50% more water pressure to break double strength glass than single strength glass. He indicated that no water-borne debris was observed to have broken the windows and there was no indication that the standing water level or moving water level around appellant's house had been as high as the window wells. Creal was also asked to assume a heavy rainfall of 8 to 10 inches and that two windows in the window wells were broken somehow, and given these facts, would the water entering the windows yield a depth of 2½ inches in the basement. He answered that it would not, but under those facts, about one-half inch of water would enter. There would not be much pressure against

the back of the bookcase (where the liquor bottles were stored) so as to knock over the shelves. Creal observed the cinder block portion of the basement walls and there was no staining or other indication that water had come over the foundation and down those walls, and there was no indication of water percolating through the floor seams.

Appellant pleaded that the loss was "the result of windstorm or hail; vandalism or malicious mischief; theft or attempted theft two basement windows into the insured premises were broken; the patio door was damaged by attempted force entry and cabinet shelves containing a liquor collection were knocked over and the open windows admitted water into the basement of the home causing extensive damage to the home and its contents * * *." The answer to the petition pleaded that the damage was proximately caused by water which was specifically excluded under the policy in Section I, Exclusion 3, at page 6 thereof. Respondent's letter to appellant of August 21, 1984, denying coverage, stated that the water damage to her basement rec room and adjoining rooms was caused by flooding or surface water, and advised her that she might find the exclusion in Section I of her policy under Exclusion No. 3., which is:

"3. Water Damage, meaning

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. water which backs up through sewer or drains; or

   c. Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."

In Point I, appellant contends that the trial court erred in giving Instruction No. 8:

"Your verdict must be for the Defendant, if you believe: any loss Plaintiff

sustained resulted directly or indirectly from water damage.

Water damage as used in this instruction means flood or surface water, or water which backs up through sewers or drains."

■ The point specifically complains that there was no evidence of flood or surface water backing up through sewers or drains, and thus that disjunctive submission was not supported by the evidence as required by MAI 17.02, Note on Use, No. 2, and *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502 (Mo.App.1979), and like cases. Although respondent's adjuster, Vocke, acknowledged that his letter denying coverage, above set forth, stated that the damage was caused by "flooding or surface water" and that it did not say anything about the water backing up through the drains, there was ample other evidence from which the jury could find that water did back up through sewers or drains. Appellant's witness, Creal, testified that the reason for the overland water flow on the evening of June 7 was that the combination storm and sanitary lines were already full. He also testified that there was a large storm sewer opening on the northwest corner of Noyes and Francis streets. The Superintendent of Streets testified that about 10:00 or 11:00 p.m. that night, he was unable to go through the intersection of Noyes and Francis coming from the east in the area of 29th Street. Witness Nash testified that water was coming up through her basement toilet stool, her basement was flooded with about a foot of water, and Noyes was like a small river. Robertson testified to damage to his basement. These homes were in the near vicinity of appellant's home. The evidence does not show the elevations of the storm/sanitary sewers, but the jury could infer that the basement floor was low enough to permit water to back up into her basement from the already full storm/sanitary sewers. It is noted that Creal testified that only ½ inch of water would have entered through the broken windows, but that he found 2½ inch water mark depth on the walls. The additional 2 inches had to come from somewhere, the basement

drains and sewer being the only conceivable source under the evidence received. The evidence was sufficient to support Instruction No. 8, and Point I is overruled.

In Point II, appellant contends that the giving of Instruction No. 8 was error because respondent was estopped to assert the defense of water backing up through sewers and drains as that matter was not asserted in the letter denying coverage. She says also that the defense was not sufficiently pleaded affirmatively so as to give notice and allow preparation to meet it. Although Vocke's letter did not specifically mention water backing up through sewers and drains, it did mention flooding; surface and ground water, which as above stated, caused the storm/sanitary sewers to become full. The letter did refer to the Section I, paragraph 3 of the exclusions, which included sewer and drain backup. The answer also pleaded the exclusions by reference to Section I, paragraph 3, page 16, of the policy.

■ On these facts appellant was not denied coverage on one basis and then forced to defend the denial of coverage on another basis contained in a different provision of the policy which is the usual situation requiring estoppel to be applied. Cf. *Lawrence v. New York Life Ins. Co.*, 649 S.W.2d 461, 464 (Mo.App.1983), and the there cited case of *Morris v. Travelers Insurance Co.*, 546 S.W.2d 477, 487 (Mo. App.1976). Rather, the exclusions of flooding, surface and ground water, and sewer or drain backup, are in the same paragraph, and they are not ambiguous or incompatible. See *Macalco, Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883, 889 (Mo.App.1977), where an exclusion of a "Pilot Clause", first asserted as a defense, was not ambiguous or incompatible with Exclusion 6.(d), concerning a student pilot who flew with passengers without advance approval of and under the supervision and control of an F.A.A. Certified Commercial Instructor Pilot. Here, the defense of exclusion of water backing up through sewers or drains was consistently and adequately asserted by respondent from the outset. Point II is overruled.

■ Under Point III, appellant claims that the Section I, paragraph 3 exclusions,

do not apply to Coverage C Personal Property, and therefore the trial court erred in giving Instruction No. 8. The argument proceeds that Coverages A and B are insured for all risks of physical loss, except losses excluded under Section I–Exclusion, while Coverage C has no reference to Section I–Exclusion, but instead lists specific exclusions and exceptions to the various listed perils. Thus, appellant concludes that the Section I exclusions do not apply to personal property. What is significant is that Coverage C is listed as a peril insured against in Section I, along with Coverages A and B, without differentiation, and then the exclusions refer to Section I, without distinction between them. As respondent points out, Coverage C does not list water damage as a peril insured against, thus it is consistent with Section I Exclusions which does exclude coverage for water damage as that term is defined. Appellant's argument is without merit.

It is also contended in Point III that the policy is ambiguous with respect to whether the exclusions section applies to Coverage C, and thus should be construed in favor of that coverage. The entire provision for perils insured against in Coverage C has been read, along with the exceptions and exclusions specifically listed thereunder, also along with the Section I exclusion for water damage, as must be done. "In an insurance policy, ambiguity arises when there is duplicity, indistinctness or uncertainty of meaning. To determine what meaning was intended, the ambiguous phrase is not considered in isolation but by reading the policy as a whole with reference to associated words." *Nixon v. Life Investors Ins. Co. of America*, 675 S.W.2d 676, 679 (Mo.App.1984). So read, it is clear that the Section I Exclusions are in addition to the ones specifically mentioned under Coverage C, and the provisions are not ambiguous. Point III is overruled.

In convoluted Point IV, appellant contends that the trial court erred in excluding her evidence of vandalism at her other property at 417 North Noyes, which occurred in August, 1984, after the damage to her residence on June 7–8, 1984. She says that the vandalism at 417 North Noyes caused her to change her belief to the cause of damage to her residence at 206 North Noyes to being vandalism, and disallowed her explanation as to the cause of that damage. She also claimed that vandalism damage to Gregory's car some two weeks after the flood caused her to change her belief.

In a motion in limine, respondent filed a motion to prevent appellant from introducing into evidence a police report concerning alleged vandalism of her home at 206 North Noyes. The motion was sustained upon the grounds that the evidence was self-serving and hearsay, but was conditioned upon a foundation to be later made that the evidence was relevant for some other purpose.

■ As to the evidence of subsequent acts of vandalism, above related, the court in *Poston v. Clarkson Construction Company*, 401 S.W.2d 522, 526 (Mo.App.1966), said, "[S]uch other evidence of other instances of similar result from a common cause are only logically relevant when the essential circumstances are sufficiently similar to exclude a reasonable likelihood of the same result being produced by a different cause in the two instances." Here, appellant did not show that the claimed vandalism to her house at 206 North Noyes was similar to the claimed vandalism to her house at 417 North Noyes, or to that of Gregory's car so as to be admissible. The 417 North Noyes vandalism was said to have occurred some two months after the flood, and thus is too remote. Facts which are remote and collateral are not properly admissible in evidence and should be excluded upon proper objection. *Radloff v. Penny*, 225 S.W.2d 498, 503 (Mo.App.1949). Besides, the admission or exclusion of such evidence is largely within the trial court's discretion, and no abuse thereof here appears. *Doyle v. St. Louis-S.F. Ry. Co.*, 571 S.W.2d 717, 726 (Mo.App.1978). Appellant has not shown why the police report was not inadmissible hearsay. Point IV is overruled in its entirety.

■ Appellant claims error in defense counsel's argument to the jury to the effect that Gregory had not told engineer Creal anything about a garden hose, and at some point thereafter came up with the idea that

during the 10 inch rainstorm, somebody kicked in the window and tried to flood the basement with a water hose. No objection to the argument was made until after the conclusion thereof. The only relief asked was that appellant be allowed to introduce an undeleted copy of Creal's report, which contained his conclusion that somebody damaged the patio door, broke two basement windows, tried to crawl feet first through a window that was too small knocking over two bookcases containing liquor, and when frustrated, picked up the garden hose and flooded the basement to a depth of at least 2½ inches. The objection, made after argument, came too late and was properly overruled. *Blanford v. St. Louis Public Service Co.*, 266 S.W.2d 718 (Mo.1954). No other relief was requested. Point V, raising this issue, is overruled.

In Point VI, appellant also claims error in the overruling of her objection to defense counsel's argument that "water damage, meaning flood, surface water, water that backs up through sewers or drains, *and water below the level of the ground that seeps or leaks into the building.*" It is said that the italicized portion was immaterial and was not included in Instruction No. 8. The argument was merely referring to the exclusion portion of the policy which was in evidence to demonstrate that the policy was an all risk one *except* for excluded matters. Counsel was not arguing that water seepage was an excluded cause of the damage, but was merely meeting appellant's argument that the policy covered all risks. Point VI is overruled.

What this case amounts to is that the jury, as the trier of the fact, in considering all the evidence and the credibility of the testimony, has found against appellant on her claim that the damage was caused by vandalism. That finding may not be disturbed on the basis of any here asserted error.

The judgment is affirmed.

All concur.