**Ronal J. KILGORE and Ronal V. Kilgore, Plaintiffs-Appellants,**

v.

**Howard LINVILLE, d/b/a Ferguson Super Service and Douglas K. Linville, Defendants-Respondents.**

No. 52262.

Missouri Court of Appeals, Eastern District, Division Four.

July 14, 1987.

Lawrence E. Manion, Clayton, for plaintiffs-appellants.

Edward Thomas Liese, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Presiding Judge.

Plaintiffs appeal from a jury verdict which found plaintiff Ronal J. Kilgore 100% negligent in this personal injury suit. His claim for damages arose out of a collision between his person and a tow truck driven by defendant, Douglas Linville. Plaintiff argues on appeal that the trial court erred in refusing his tendered instruction on failure to swerve, and in allowing defendant's instruction on failure to keep a careful lookout and leaving a place of safety. Plaintiff also contends that certain evidence was improperly admitted because it

was conclusionary and invaded the province of the jury.[1] We affirm.

■ In considering whether an instruction was supported by the evidence adduced at trial, we view all the evidence in the light most favorable to the offering party, in this case plaintiff, and give plaintiff the benefit of all favorable inferences reasonably drawn therefrom and disregard evidence to the contrary. *Morgan v. Toomey*, 719 S.W.2d 129, 130–31 (Mo.App., E.D.1986); *Stanfill v. City of Richmond Heights*, 605 S.W.2d 501, 502 (Mo.App., E.D.1979). A party is entitled to an instruction on his theory of the case if it is supported by the evidence, *Williams v. M.C. Slater, Inc.*, 590 S.W.2d 357, 360 (Mo. App., E.D.1979), and the lack of substantial evidence on any theory submitted renders the tendered instruction erroneous, *Stanfill*, 605 S.W.2d at 502.

In the light of the above principles, the material evidence adduced at trial is as follows. The collision occurred on April 2, 1983, at approximately 8:45 p.m., in the vicinity of Woodson Road and Stansberry Avenue in St. Louis County. Woodson Road runs north and south and Stansberry Avenue intersects Woodson from the east. Woodson Road has two northbound lanes and two southbound lanes, totalling 59 feet in width, plus an 8 foot shoulder lane on each side. There is no traffic signal for vehicles travelling on Woodson at its intersection with Stansberry. The evidence at trial was conflicting as to whether a street light at the north-east corner of the Woodson-Stansberry intersection was lit that night. At the time of the accident, it was dark and the pavement was wet, but it was not raining.

Defendant was driving his father's tow truck north on Woodson, in the curb lane, returning home from helping a friend start a car. Plaintiff, who was on foot, entered the southbound lanes of Woodson Road from the west and proceeded to cross the northbound lanes. He was struck by the right front corner of Linville's truck at the east side of the curb lane of Woodson Road. Plaintiff testified that he did not remember anything after he approached the west shoulder lane of Woodson Road. Defendant testified that he was driving 35 miles per hour (in the 40 miles per hour speed zone) and that he first saw plaintiff when plaintiff was approximately three feet to his left (west) and ten feet ahead (north) of his vehicle. Plaintiff was running at the time. Defendant applied his brakes, but they failed to take "hold" due to the wet pavement. He also testified that he tried to swerve to the right, since plaintiff appeared on his left. His headlights were on and his view was unobstructed. Plaintiff was wearing a dark jacket and white pants.

Two eye-witnesses testified for the defense. Maassen was proceeding southbound on Woodson Road and testified that he saw plaintiff, from a distance of approximately 150 feet, as plaintiff ran slowly from the west side of Woodson to the center of the road, where he hesitated, and then ran "... as if he was ... trying to beat the car." Maassen did not recall what direction plaintiff's head was turned when he hesitated in the center of the road. The other witness, Moran, was stopped on Stansberry Avenue facing west, waiting to make a right-hand turn onto Woodson. He testified that as he looked to his front and right in preparation of making his turn, it was difficult to see plaintiff, but he caught sight of him when plaintiff was in the southbound lanes of Woodson. According to Moran's testimony, plaintiff was first walking fast, then began to run very fast at the center of the road, and was looking towards the truck. Neither Moran nor Maassen noticed the truck slowdown or swerve prior to impact.

The trial court refused plaintiff's tendered instructions which combined failure to keep a careful lookout and failure to avoid by swerving or slackening speed, and his case was submitted to the jury solely on the lookout instruction. Defendant's in-

---

1. Because of the result reached today, we need not consider plaintiff's final point relied on pertaining to the directed verdict in favor of co-defendant, Howard Linville, father of Douglas Linville, on the issue of principal-agent liability.

**64**

structions combining failure to keep a careful lookout and leaving a place of safety were accepted.

■ In his first point, plaintiff argues that the trial court erred in refusing his combined instructions, since they were both supported by the evidence. As noted above, plaintiff submitted his case on the theory of failure to keep a careful lookout. We therefore consider whether there was substantial evidence to have supported the submission of a failure to avoid by swerving instruction. To warrant a "failure to swerve" instruction, plaintiff must show that defendant had the means and ability to avoid the collision by swerving. *McCreary v. Conroy*, 611 S.W.2d 234, 235 (Mo.App., E.D.1980). Plaintiff's evidence must further show that there was sufficient time and distance, considering the movement and speed of the vehicle, to enable defendant to take effective action to avoid the collision. *Id.* Further, defendant's duty to swerve only arises at the moment defendant knew or should have known that a collision was likely to occur. *Morgan v. Toomey*, 719 S.W.2d 129, 136 (Mo.App., E.D.1986). In other words, for defendant to be in breach of this duty, it must be shown that he had the "time, distance, means and ability to avoid the collision by swerving and he failed to do so." *Id.* We believe plaintiff failed to establish when defendant's duty to swerve away from him arose. Plaintiff has no recollection of the incident. Defendant testified that he first saw plaintiff when plaintiff was 10 feet in front of him and 3 feet to his left. He also stated that his speed was 35 miles per hour. At best for plaintiff, defendant would be driving 35 miles per hour or 51 feet per second. Given defendant's normal reaction time of .75 second, e.g., *Sandifer v. Hamilton*, 626 S.W.2d 439, 441 (Mo. App., W.D.1981), defendant would have travelled approximately 38 feet before he could have started to swerve. But plaintiff introduced no explicit evidence to show the speed at which he crossed the road, his

distance travelled, nor his location and distance from defendant at the time defendant should have become aware of the danger of a collision. Absent such evidence, it is impossible to determine whether defendant had the ability to avoid collision when his duty to swerve arose. Thus, there was not sufficient evidence to warrant submitting the failure to avoid by swerving instruction. Point denied.[2]

■ In his second point, plaintiff contends that the trial court erred in giving defendant's tendered instructions because they were not supported by substantial evidence. We disagree. Although plaintiff testified that he could not remember how the accident occurred, there was substantial evidence to support these instructions. Moran testified that plaintiff was looking "toward" the truck when he reached the center of Woodson Road. Maassen did not see plaintiff look at the truck, and defendant's testimony did not include a description of the direction of plaintiff's head prior to the collision. The jury could reasonably infer from the evidence that plaintiff failed to keep a careful lookout, either by not looking before he crossed the northbound lanes or by lacking care in entering the truck's path. As to plaintiff's duty to remain in a place of safety, the evidence shows that plaintiff was in the middle of Woodson Road, between the northbound and southbound lanes, before proceeding into the northbound lanes. A place of safety has been held to exist between lanes of traffic. *Morris v. Duker*, 414 S.W.2d 77, 83 (Mo.1967). This point is denied.

■ In his third point, plaintiff alleges that the trial court erred in overruling his objection to Maassen's statement that "it was as if [plaintiff] was running, trying to beat the car" because this comment called for a conclusion and invaded the province of the jury. Plaintiff has not preserved the alleged error for review because he did not move to strike the evidence or withdraw it from the jury's consideration after his objection was overruled. Where there is no

**2.** For a thorough discussion of the failure to swerve and failure to keep a careful lookout instructions and their individual distinctions, see *Morgan v. Toomey*, 719 S.W.2d 129 (Mo. App., E.D.1986).

objection until after the evidence is given and the objecting party does not move to strike the evidence or withdraw it from the jury's consideration, the question of admissibility is not reviewable. *Devine v. Kroger Grocery & Baking Co.*, 162 S.W.2d 813, 819–820 (Mo.1942); *see also Hanson v. Tucker*, 303 S.W.2d 126, 129 (Mo.1957). Furthermore, Maassen's statement does not constitute prejudicial error, since there was sufficient evidence that plaintiff ran at a fast pace into the northbound lanes of Woodson Road. This point is denied.

The judgment of the trial court is affirmed.

STEPHAN and SATZ, JJ., concur.