Maria C. Reyes MAJORS, Respondent,

v.

FARMERS INSURANCE COMPANY,
INC., Appellant.

No. WD 42167.

Missouri Court of Appeals,
Western District.

June 12, 1990.

Lance W. LeFevre, Heilbron & Powell, Kansas City, for appellant.

G. Michael Fatall, Daniel J. Matula, Sanders & Simpson, Kansas City, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

TURNAGE, Presiding Judge.

Maria C. Reyes [1] filed suit against Farmers Insurance Company under her unin-

---

1. Suit was filed in the name of Maria C. Reyes Majors, however, from the record it appears that she obtained a divorce and at trial testified

sured motorist coverage for injuries she received when struck by a hit-and-run driver. The jury returned a verdict in favor of Reyes for $253,000, but on finding that the coverage of the Farmers' policy was limited to $100,000 the court entered judgment in the sum of $100,000.

Farmers contends that the court erred in admitting evidence, in that Reyes did not make a submissible case, and in that there was error in the final argument. Affirmed.

About 10:00 p.m. on January 4, 1985, Reyes went to the Hitching Post Tavern on East 9th Street in Kansas City where she was about to begin work as a part-time bartender. Ninth street, which ran east and west, was covered with snow and ice. When Reyes attempted to park her car across the street from the tavern it became stuck in the snow. Reyes went to the tavern to obtain help and Sonny Bradford and another man agreed to help her. Reyes went back to her car and succeeded in freeing it before Bradford and the other man could help.

After freeing her car, Reyes parked it on the south side of 9th Street, across from the tavern. She got out of her car and walked across the street toward the tavern. When she reached the curb on the north side of the street she turned to look back at a tire on her car. Believing that the tire looked low, Reyes recrossed the street and went to the rear tire on the driver's side, which was the tire she believed to be low. Reyes said that she stood in the street about one to two feet from her car, for about five seconds, while she checked the tire. At that time Reyes did not observe any traffic moving on 9th Street. She said that was the last thing she remembered until she woke up in the hospital.

Bradford testified that he and the other man had just started to cross 9th Street to the Reyes car when they observed that Reyes had freed the car. He observed Reyes park her car and walk across 9th Street toward the bar. He saw Reyes turn around and go back across 9th Street toward her car. The last time Bradford saw

Reyes before the accident she was walking toward her car on the street-side of the cars parked on the south side of the street. Bradford was just about to reenter the bar when he heard a thud. He turned around and saw Reyes' purse flying through the air. As he ran out into the street he observed the 1969 Chevrolet which had just struck Reyes traveling east, at an approximate speed of 30 to 35 miles per hour, on 9th Street. He said that the car did not appear to be slowing down. The car continued down 9th Street until it turned into a parking lot. Bradford saw Reyes lying in the street with her feet and legs nearly on the center line and with her head toward her car. A second car was following the Chevrolet and although the driver braked she was unable to avoid running over Reyes' legs. Bradford further testified that after the first car had struck Reyes he saw a tire mark in powder snow which was outside the snow which had been worn down with travel. The mark he observed was about one foot north of the Reyes car.

Officer Jones, of the Kansas City Police Department, arrived on the scene about 30 minutes after the accident. He testified that 9th Street was covered with snow and ice and the useable part of the street measured 38 feet. Jones measured 88 feet of skid marks which he said were left by Deborah Brown who drove the second car. He further testified that he observed shakedown about ten to twelve feet north of the snow covered south-curb near Reyes' car. He testified that shakedown occurs when a car strikes an object and material lodged in the undercarriage falls down. He stated the shakedown consisted of dirty snow and stated that shakedown would occur when a car struck a person.

Officer Andres, of the Kansas City Police Department, qualified as an expert on stopping distances, stated that calculations to determine stopping distances embody various factors including a co-efficient of friction. Andres stated that on snow and ice the co-efficient of friction would range from .30 to .60. Andres stated that based

that her name was Maria Reyes. She will be referred to as Reyes in this opinion.

on a .40 co-efficient of friction that a car going 30 miles per hour could be stopped on snow and ice in 107.98 feet and at 35 miles per hour the stopping distance would be 140.56 feet. Andres further testified that there were street lights on 9th Street which illuminated the area where Reyes was struck and that a driver eastbound on 9th Street could see the place where Reyes was struck for a distance of 200 to 300 feet. There was other evidence that the point where Reyes was struck was visible for 275 feet to eastbound traffic.

There was evidence that a car travels about 1.5 times its speed in feet per second, thus, a car traveling 30 miles per hour would cover 45 feet per second.

Farmers did not present any evidence.

■ Farmers first contends that the court erred in admitting testimony from Officer Jones that he observed shakedown of dirty snow in the street and testimony from Bradford that he observed a tire mark in powder snow about one foot north of Reyes' car. Farmers acknowledges the rule stated in *Clark v. Reising*, 107 S.W.2d 33, 35[3,4] (Mo.1937), that the testimony of a witness about wheel tracks, prints, skid marks, or other marks visible about an accident scene, is admissible if the observation is made within a reasonable time after the accident. The court stated that the length of time between the accident and the examination and the physical conditions surrounding the place of the accident which would affect such marks, such as the amount of travel on the highway and the physical condition of the surface, are elements which ordinarily affect the weight, rather than the materiality of the testimony. Farmers contends that no case in Missouri has approved the admission of evidence of wheel tracks or skid marks in the absence of evidence identifying such marks as being made by a car involved in the

accident in question. It is not necessary to discuss this question because the marks in this case were connected to the hit-and-run car.[2]

Here, the marks were observed within a short time after the accident. The location of the marks was consistent with the testimony as to the place where Reyes was standing when she was struck. The shakedown was located near where Reyes was standing when her memory went blank and the tire track was found where a car striking Reyes would have had to travel. Under the holding in *Clark*, evidence of the marks was admissible and the jury could assess the weight to be given such evidence.

■ Farmers next contends Reyes failed to make a submissible case on her theory that the driver of the hit-and-run car failed to keep a careful lookout. Farmers states that the problem with Reyes' evidence is not whether Reyes could have been seen on the street from a distance which was in excess of the driver's stopping distance, but whether the evidence was sufficient to establish that Reyes was ever in a position "fraught with danger" which gave rise to a duty on the part of the driver to take evasive action.[3] Farmers states that Reyes' last memory was of standing next to her car and there is no evidence of what she may have done thereafter. Farmers further contends there is no evidence from which the jury could find that she did or did not move from a position of relative safety into the path of the car at a time when the driver was unable to avoid striking her. Farmers speculates that Reyes may have suddenly moved into the path of the car and argues from that speculative premise that the evidence does not show when Reyes moved in front of the car and, therefore, the evidence is not sufficient to

**2.** The holding in *Clark* does not impose the requirement Farmers espouses nor does *Troxell v. De Shon*, 279 S.W. 438, 441[10] (Mo.App. 1926), cited in support of the statement in *Clark*. *Clark* also cited cases from other jurisdictions which admitted evidence of marks observed from an hour to the second morning after an accident. Nor did *Neavill v. Klemp*, 427 S.W.2d 446, 447[1–4] (Mo.1968), impose such require-

ment when the statement in *Clark* was quoted and applied.

**3.** Farmers tacitly concedes that Reyes was visible for up to 300 feet from the west for eastbound traffic long enough for the hit-and-run car to stop before striking her.

show that Reyes entered a position of danger at a time when the driver had the means to avoid striking her.

Farmers relies upon *Wallander v. Hicks,* 526 S.W.2d 848 (Mo.App.1975). The difficulty with Farmers' argument is that *Wallander* involved a boy who was struck by a car and the only evidence as to the position of the boy and car just prior to the accident was the driver's testimony that the boy suddenly jumped out in front of the car. This court held a submissible case was not made in the absence of other evidence which would show when the boy came into a position fraught with danger and the driver could have avoided striking him. That is not the evidence in this case.

Based on the evidence the jury could have found that the car which struck Reyes passed the Reyes car within about a foot and struck Reyes while she was standing one to two feet from the car. In *Jenkins v. Jordan,* 593 S.W.2d 236, 238[1, 2] (Mo. App.1979), the court held that in order to make a submissible case on a failure to keep a lookout, the evidence must show that the driver saw, or could have seen, the object struck in time to avoid the accident. The court further held that a submissible case on failure to keep a lookout may be established by circumstantial evidence.

From the evidence the jury could have found that after Reyes was struck the hit-and-run car was traveling from 30 to 35 miles per hour and was making no effort to slow down. There was no necessity for Reyes to show that she moved from a position of safety to a position fraught with danger in time for the driver to take evasive action because the jury could have found she was in a position of danger while walking and standing in the street. The jury could have found that Reyes was visible while walking to her car and for about five seconds while standing next to it. The jury could have found she was in a position of danger during all of that time if the hit-and-run car drove too close to Reyes' car. During that time the hit-and-run car traveled about 225 feet and could have

stopped in about 141 feet. With Reyes clearly visible for at least five seconds before impact, and with no evidence that the hit-and-run car was attempting to slow down, the jury could have found that Reyes was struck when the driver of the hit-and-run car simply passed the Reyes car close enough to strike Reyes because the driver failed to keep a careful lookout. The evidence was sufficient to make a submissible case of failure to keep a careful lookout.

■ Farmers further contends the court erroneously allowed Reyes to argue to the jury that Brown, the driver of the second car which struck Reyes, was not negligent. Farmers bases this contention on the fact that the court had ruled that evidence that Reyes had sued Brown, thereafter had settled the suit, and dismissed as to Brown, would not be admissible. Farmers contends that Reyes' argument that Brown would not have time to stop before striking Reyes was an argument directed at the presence or absence of negligence on the part of Brown. Farmers contends that because the court had ruled that the making of the claim against Brown and its dismissal would not be admitted that the court should not have allowed Reyes to argue concerning Brown's negligence. The answer to Farmers' contention is that the court did not bar evidence concerning the negligence of Brown, but only evidence of a claim made against Brown and its dismissal. The argument about which Farmers complains was directed at Brown's negligence and did not infringe on the prohibited area of a claim against Brown and its dismissal.

The judgment is affirmed.

All concur.